People of the State of Illinois, Plaintiff-Appellee, v. J. C. Murray, Otherwise Called James Murray, Defendant-Appellant.

Gen. No. 50,128.

First District, First Division.

July 25, 1966.

Sidney Gordon, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Daniel Leahy and Elmer C. Kissane, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, J. C. Murray, otherwise called James Murray, was indicted and tried before a jury for the crimes of burglary and theft. During the course of the trial the theft charge was nolle prossed and the defendant convicted of the crime of burglary. He appeals on the ground that prejudicial errors were committed prior to and during the trial which deprived him of a fair and impartial trial.

On Sunday, February 25, 1962, at approximately 4:00 p. m., Ben Rosen, the owner of the Mercy Drug Store located at East 26th Street, Chicago, closed his store after setting the burglar alarm which was the type that did not ring in the store but activated an alarm in the office of a watch service. The next morning, at about 3:00 a. m., he was informed that the alarm had rung in the agency's office indicating that the store had been broken into. He went to the store and, in company of police officers, noted that there was "a big hole up on top of the roof of the ceiling"; * that a stepladder was nearby; that "the store in general was pretty well disturbed" as evidenced in particular by an array of liquor bottles and hosiery around the ladder; that a gun was missing, and approximately $3 in change was taken from the cash register.

He conducted business as usual on the 26th and an agent from the Central Watch Service repaired the burglar alarm by stretching wires over the hole, making egress through it without detection impossible. At 10:00 p. m., that night, Rosen again locked his store after resetting the alarm and went home where shortly thereafter he was informed by phone from the Central Watch

---

\* The building was in the process of being demolished and the upper stories were being removed, leaving the drug store on the first floor intact and operating.

Service that the alarm had rung again in its office. He immediately went to his store where he met an agent of the watch service and several police officers outside the premises. He opened the door with his key and entered, accompanied by agent Bronkhorst of the watch service and police officer Cerinich "looking for what caused the alarm to go off." The defendant was discovered hiding beneath a desk and was "dragged out from underneath" it and searched. A revolver and $4 in change were found on his person. Defendant denied the gun was his but did say that he had been in the store all day; that he could not get out because, upon chopping the hole, the metal lathing had been depressed to a position which prevented his exit.

On entering the store Rosen observed that the step-ladder was beneath the boarded-up hole in the ceiling, and that whiskey bottles and hosiery were strewn at the base of the ladder. He further observed that the defendant wore no gloves or shoes and upon asking the defendant if he had worn gloves to avoid leaving finger-prints, the defendant replied that he had worn gloves and that his gloves and shoes were atop a telephone booth under some boxes; that he had hidden there after entering the store through a hole in search of money and whiskey on the evening of the 25th. An examination of the top of the booth revealed the defendant's gloves and shoes and, in addition, Rosen noted a "pretty foul odor" emanating from the phone booth.

The defendant contradicted this testimony at trial say-ing that he was looking for junk in the alley behind Rosen's store on the night of the 26th when agent Bronk-horst came out of the store, hit him with a pistol, and forced him inside where he was confronted by several police officers and Rosen. Defendant further testified that the money found on his person was his own; that no gun was found on him but rather on the floor, and

that he at no time admitted making a hole in the ceiling or hiding inside the store.

Defendant's prior convictions for armed robbery and burglary were received in evidence on the issue of defendant's credibility.

On appeal, defendant does not contend that the verdict is against the manifest weight of the evidence but does advance certain contentions which question the fairness and impartiality of his trial.

First, defendant contends that the State was improperly allowed to peremptorily challenge two jurors, constituting reversible error.

Defense counsel waived court reporting of the voir dire proceedings and thus the record before us does not disclose the exact form of the questions, answers, remarks or sequence of events of the voir dire examination. However, the record does contain colloquy between counsel and the trial judge, including the latter's summarizations, which sets forth with sufficient clarity the facts underlying defendant's first assignment of error.

At voir dire after the first panel of jurors had been sworn, four more jurors in the second panel were examined by the State and tendered to defense counsel. The latter examined the jurors, excused one, substituting a prospective juror, and retendered the panel to the State. The State then excused, by a peremptory challenge, two members of this panel originally tendered by it to the defense. Defendant, citing Mayers v. Smith, 121 Ill 442, 13 NE 216 (1887) asserts that the prevailing Illinois rule precludes peremptory challenges after both sides have accepted a juror and that, therefore, the State's challenge was improper. That is not the rule. The pertinent provisions of the Jurors Act, Ill Rev Stats 1965, ch 78, §§ 21 and 23, explicitly state that jurors must be accepted in panels of four. The Supreme Court, interpreting this statutory mode of procedure has held that until both sides have accepted a

panel of four jurors either side has a right to peremptorily challenge a juror previously tendered to the other side. People v. Schanda, 352 Ill 36, 185 NE 183 (1933). Moreover, the conduct alleged herein as error is substantially identical with the conduct before the Supreme Court in People v. Gray, 251 Ill 431, 96 NE 268 (1911), wherein the court in upholding the validity of the peremptory challenges, expressly distinguished the Mayers case relied upon herein by the defendant. The court stated (p 438) :

> [I]n that case [Mayers v. Smith] the full panel had been accepted by both sides and thereafter an attempt was made to peremptorily challenge one of the jurors so accepted. The full panel had not been accepted on both sides in this case, and the ruling in Mayers v. Smith, supra, is not in point here. Until both sides accept the panel of four, without question the statute permits either side to challenge peremptorily a juror theretofore tendered to the other side.

We, therefore, hold that no error was committed in this regard.

Next, defendant contends that the trial court erred in allowing "an admitted biased juror to become a member of the jury after challenge for cause and objection of counsel." The basis for this contention is necessarily the juror's answers to questions and the circumstances making up his voir dire examination. As previously noted, that examination does not appear in the record although, again, there is colloquy relating to the questioning of the allegedly biased juror. This colloquy alone is insufficient to enable us to independently evaluate the issue of the juror's alleged bias. The proper determination of bias, if any, is dependent upon the exact language of the questions and answers and the context within which they were given. Absent such facts, a

determination of the charge of bias would be grounded on mere speculation and surmise.

Defendant then charges that prior to and during the course of the trial he endeavored to learn whether the complaining witness made a statement to the police by filing appropriate motions and serving a subpoena duces tecum on the State and police department; that such a statement did in fact exist, and that it was never furnished him before or during trial. Defendant contends that the withholding of the complaining witness's statement is contrary to section 9 of chap 51 of Ill Rev Stats which grants to a court the power ". . . upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce writings in their possession or power which contain evidence pertinent to the issue." Defendant also contends that said withholding is contrary to the decisional law of Illinois as found in two Supreme Court cases, People v. Moses, 11 Ill2d 84, 142 NE2d 1 (1957) and People v. Wolff, 19 Ill2d 318, 167 NE2d 197 (1960).

██ Without considering whether defendant may now invoke the protection of section 9 without seeking to invoke it at trial, it is clear under the Moses and Wolff cases alone that the accused is entitled for impeachment purposes to the production of all competent documents relevant to the testimony of prosecuting witnesses when such production would not be against the public interest, and that the unjustified witholding of such documents may constitute reversible error. However, the record before us does not indicate that the complaining witness, Rosen, ever made a statement to the police. Furthermore, there is nothing in the record to indicate that any other "documents" existed which the defendant had a right to have produced under the Moses-Wolff rule, and which were not turned over to him.

382

Defendant predicates the existence of Rosen's "statement" to the police upon the following testimony at trial during cross-examination:

> Q. Was officer Cerinich writing anything down while he asked you [Rosen] these questions?
> A. I think so.
> Q. And at the time that you finished giving your answers did they ask you to sign something at that time?
> A. I don't really remember, but I think I did sign it.

Officer Cerinich testified that although he had talked with Rosen pursuant to filling out a standardized burglary report, neither he nor any other officer in his presence, took a written question and answer statement from Rosen or agent Bronkhorst. Moreover, the record shows that the police department, pursuant to the subpoena duces tecum, which apparently was served upon it alone, delivered to the State's Attorney its complete file on the burglary of Rosen's store consisting of:

> "Arrest slip of J. C. Murray: Narrative report of Officers Macke Crean and Shapiro; Narrative supplemental report A. J. Powers; Narrative supplementary report by officer Otto McCullom."

These reports were turned over to defense counsel and their receipt acknowledged by him at trial. When it was protested that these reports did not represent the police department's complete file, the trial court advised defense counsel to check with the police department with reference to a statement given by Rosen. This defense counsel then did but admitted that "we could not determine at this time whether a statement was in fact made or not." In the absence of proof of the existence of such a statement, there could be no violation or abridgement

of defendant's rights under the rule of the Moses-Wolff cases.

 Defendant contends that "error was committed by the trial court in permitting the theft count to be nolle prossed at a late stage in the proceedings and without the consent of the accused or a finding of acquittal of that charge." Although defendant admits that his research of the law indicates that the State can nolle prosse counts at almost any stage of the proceedings, he argues that he was not accorded a protective qualification in that his consent was not obtained nor was there an acquittal of the crime charged which would have prevented reinstatement of the count during the same term of court. We find no basis for this contention as such issue was disposed of in People v. Hines, 30 Ill2d 152, 195 NE2d 712 (1964) when therein the court said (p 156):

> It is contended by defendant that he could be placed in double jeopardy by the State's nolle prossing of count II. The jury had already been panelled and evidence heard prior to the possession count being nolled. The claim of the possibility of double jeopardy is without merit. Defendant could not be subsequently reindicted and retried for the nolled charge.

See also section 3-3, chap 38 (Ill Rev Stats 1965, c 38, sec 3-3) and comments thereunder regarding Multiple Prosecution for Same Act.

██ ██ Subsequent to the theft count being nolled, the gun and coins found on the defendant at the time of his arrest in the premises were allowed into evidence. Defendant charges that the admission of the coins—the stolen money—was admitting evidence of the theft and was reversible error.* The money was inadmissible as

---

* Defendant raised no issue regarding the admission of the gun into evidence.

384

evidence of the nolled theft charge but admissible as evidence of the burglary. The offense of burglary is the entering of a building without authority, with the intent to commit a felony or a theft. People v. Brancztet, 59 Ill App2d 381, 208 NE2d 416 (1965); People v. Griffin, 48 Ill App2d 148, 198 NE2d 115 (1964); People v. Colby, 27 Ill2d 273, 189 NE2d 317 (1963).

■ Finally, defendant attacks the admissibility of the coins because he says there was a disparity between the amount of the coins when counted in open court ($3.97) and the amount written on the envelope containing the coins ($4). While from the record it appears that there was a plausible explanation for the apparent difference, even if the disparity actually existed the point would not be well taken.

In the Brancztet case, the court said (p 387):

> A quantity of change and a screwdriver were found on the defendant after a lawful search. Even if there had been no positive identification of some of the coins, the evidence taken from the defendant's person was clearly admissible.

See also the Griffin case, pp 154, 155 and the authorities cited.

For these reasons, the conviction is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.