Meyer Shapiro *et al.*, Plaintiffs-Appellants, *v.* Rose Chernoff, Defendant-Appellee.

(No. 55178;

First District—January 25, 1972.

Friedlander, Wiesz & Levin, of Chicago, (Sherwood L. Levin, of counsel,) for appellants.

Mitchell F. Asher, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This action was brought by two of the three children of Yetta Strauss, now deceased, to recover contribution from their sister, Rose Chernoff, for money expended in support of their indigent mother prior to her death. The complaint was dismissed with prejudice for failure to state a cause of action, and plaintiffs appeal.

Plaintiffs' amended complaint alleges that from May 1, 1963, until her death in 1969, Yetta Strauss was nearly totally dependent upon her children for support and maintenance, that during that period plaintiffs expended over $27,000.00 in her behalf, and that defendant, while financially able to contribute to her support, refused to do so. The complaint requests contribution in the amount of $9,000, one-third of the amount expended.

Following dismissal of the complaint, plaintiffs filed a notice of appeal. Shortly thereafter, however, defendant died. Defendant's executor subsequently filed a motion to dismiss the appeal contending that, upon defendant's death, the action abated. Plaintiff responded to the motion and urged that the action is one which survives the death of the defendant and moved that the decedent's executor be substituted as defendant pursuant to Ill. Rev. Stat. ch. 110, par. 54(2).[1] The motions were taken with the appeal.

*Opinion*

We initially address ourselves to the motion to dismiss the appeal. Defendant died after her motion to dismiss the complaint had been granted and while the cause was pending on appeal. While diverse statutory and common law rules are usually applied to determine whether an action abates upon the death of a party prior to final judgment, our Supreme Court has recently dealt with the situation where a

---

[1] That provision states:
"Death. If a party to an action dies and the action is one which survives, the proper party or parties may be substituted by order of the court upon motion."

party dies pending appeal. In *Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill.2d 239, the court held that there is no abatement upon the death of a party if the litigation has progressed to a point at which the merits of the plaintiff's allegations have been affirmatively determined. However, the court further indicated at pages 242, 243:

"There are numerous cases which hold that the death of a plaintiff pending his appeal from a judgment for the defendant in a nonsurviving action abates the action and the appeal must be dismissed. [citations omitted]. Each of these decisions, however, involved a situation in which both the verdict and the judgment were for the defendant in the trial court. They proceeded upon the ground that since the plaintiff does not have a verdict in his favor, "[i]f the judgment below against [plaintiff] * * * be reversed * * *, no new trial could be had, because the action has abated by his death."

In *Tunnell,* the plaintiff had received a jury verdict in his favor in an action for libel in the court below, however, the verdict had been overturned by the trial judge and judgment was entered for defendant. The court stated, at pages 243, 244:

"In cases like this one, reviewing courts have recognized that it is inappropriate to dismiss an appeal upon the death of the plaintiff-appellant. "Where it is found that the trial court improperly granted a judgment notwithstanding the verdict, it would be an unjust rule that would deny appellant relief as of the date of the submission of the motion * * *." What is significant in such cases, in our opinion, is not any metaphysical notion of merger of the cause of action into the verdict, but rather the circumstances that all factual questions had been resolved before the plaintiff died. No new trial is involved, and the reviewing court is in a position to determine the controversy on the merits. The present case was ripe for judgment when the plaintiff died, and the appellate court properly held that his death did not abate the action."

In the case at bar, defendant also prevailed below. But here there was no hearing on the merits of the plaintiffs' allegations as there had been in *Tunnell.* In that case, the court expressly rejected the universal application of the old concept of merger of the cause of action with the judgment and substituted a rule which allows a pragmatic exception to avoid unnecessary proceedings. Thus, where defendant has prevailed below, but without any hearing to determine the factual issues, and a party dies pending appeal, a rule that prevents abatement of any action would only result in abatement on remand if the action is one that abates. These are the circumstances with which we are now faced. Since this court is not in a position to determine the entire controversy on its merits,

it is therefore appropriate to apply the survival rule which would have been applicable had the issue been presented in the trial court.

■■ Illinois law determining the abatement or survival of actions is governed by common law rules and statutory provisions changing the common law.[2] Application of the correct rule, however, depends upon the nature of the action to which it is applied. It is therefore necessary to characterize the theory of recovery with which we are dealing.

■■ Plaintiffs have described their claim as one for contribution.[3] Contribution, however, is not in itself a theory of recovery but merely a term which describes the result desired. The right to bring such an action is actually based upon a more specific equitable or legal theory.

■■ In their argument on the merits of this appeal, plaintiffs depend upon a liability imposed by statute [4] for assertion of their claim. Thus, it may be argued that the cause of action arises from statute and that the abatement rule pertaining to statutory actions should be applied. Under Illinois law, if an action is one created by statute, and neither that statute nor any other provides for its survival, the action abates upon the death of a party. (*Creighton v. Pope County* (1944), 386 Ill. 468.) None of the statutes relied upon by plaintiffs contain a provision for the survival of an action for contribution arising from the liabilities created. Therefore, if this action is characterized as statutory in nature, we would appropriately hold that it does not survive.

■■ Even though this contribution action could never be maintained without the earlier imposition of the statutory liability upon multiple parties, the creation of the right in the primary obligee is not synonomous with the creation of a right to contribution between two or more obligors. These rights are separate and distinct and need not necessarily coincide in time nor theory of recovery. Thus, even though the primary liability is statutorily created, a resulting contribution action need not be based upon statute.

---

[2] Ill. Rev. Stat., ch. 3 par. 339 provides for the survival of a number of actions which abated at common law. The section provides:

"§ 339. ACTIONS WHICH SURVIVE. In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 14 of Article VI of 'An Act relating to alcoholic liquors,' approved January 31, 1934, as amended."

[3] Paragraph seven of the complaint states:

"7. That the plaintiffs seek contribution from said defendant for the amounts heretofore expended."

[4] Plaintiffs rely on Ill. Rev. Stat. (1961) ch. 23 par. 112 and Ill. Rev. Stat. (1955) ch. 68, par. 52(f). See notes 5 and 6, *infra*.

This principle was applied in *Siegel v. Fish* (1906), 129 Ill.App. 319. The plaintiffs in that case were holders of unpaid capital stock subscriptions who had been forced to pay corporate debts under a liability imposed by statute. They brought an action for contribution against other holders in the same class who had been dismissed from the creditors' action and had not been held liable. Defendants interposed the five year statute of limitations on such actions as a defense. The court ruled that the right to contribution had come into being, not when the corporate debts were incurred, but when plaintiffs paid those debts to the judgment creditors. Because the payments had been made within the five year period, the statute was not available to defendants. The court said at page 323:

> "In the case at bar the action is not brought by a creditor of the corporation to enforce statutory liability, but by stockholders who have been compelled to pay the creditors while others equally liable to the corporation to the extent of their unpaid subscriptions have escaped. The right of contribution sought to be enforced here by stockholders who have paid against stockholders who have not, rests not upon the statute, but upon well recognized principles of equity. 'The doctrine does not rest on the express contract between the parties, but on the common obligation resting upon them, and on the broad principle of justice that where one has discharged a debt of obligation which others were equally bound with him to discharge and has thus removed the common burden, the others who have received an equal benefit ought in conscience to refund to him a ratable proportion.' A. & E. Encyc. of L., 2d ed., vol. 7, p. 326. This right of contribution is an equitable right."

Thus, the court held that, even though the primary liability was created by statute and its enforcement would have been a statutory action, the right to contribution between those liable remained essentially equitable. ■■ The same principle applies to the case at bar. Even though the liability imposed upon plaintiffs and defendant for the support of their indigent mother arose out of statute, this action is one for contribution between those obligors and is not an action to enforce the statutory liability. Recovery in the action rests, therefore, not upon the statute creating the liability, but upon the general accepted equitable principles stated in the quote above. The contribution action is an equitable one and its survival is dependent upon the rule applicable to equitable, not statutory, actions. ■■ The common law distinction between those actions which survived and those which abated upon the death of a party was based upon the

type of injury of which the plaintiff complained. If the interest to be protected was primarily a property interest, then the action survived; however, if the interest was primarily personal, the action was held to abate. (*Creighton v. Pope County, supra.*) The interest of which the plaintiffs in this case complain is purely monetary. The defendant's refusal to bear her share of the burden of her mother's support allegedly injured the plaintiffs to the extent of $9,000 in out-of-pocket expenses. There were no injuries to the person alleged. Therefore, application of this criteria to the fact situation at hand would undoubtedly result in a finding that the action survives.

■■■ A second test has also been widely applied to determine whether a specific action survives. If the right asserted in an action is assignable, it has been held that it survives the death of either party. (*Creighton v. Pope County, supra.*) And while there are no Illinois cases on point, the general rule is that a right to contribution is assignable. (*Hall v. Harris*, 6 Ga.App. 822; *Falley v. Gribling*, (Ind.) 22 N.E. 723; *Davidson v. Wallace*, 53 Miss. 475; *Dillenbeck v. Dygert*, 97 N.Y. 303; *Pully v. Pass*, 123 N.C. 168; *McKay v. Citizens Rapid Transit Co.*, 190 Va. 851; *Brooke v. Boyd*, 80 Wash. 213.) Therefore, application of this test would also result in survival of the action despite the death of defendant.

■■■ Applying the above criteria, we hold that the cause of action for equitable contribution is one that survives, the motion to dismiss the appeal is denied and defendant's personal representative is substituted for purposes of the appeal. We now proceed with our review of the court's dismissal of the complaint.

■■■ Under the common law, there was absolutely no duty on the part of children to contribute to the support of their indigent parents. (*Town of Aroma Park v. Town of Papineau* (1942), 313 Ill.App. 135, 39 N.E.2d 396; *People v. Hill* (1896), 163 Ill. 186, 46 N.E. 796.) However, this rule has been changed by statute in Illinois. Section 52(f) of the Uniform Reciprocal Enforcement of Support Act [5] and sections 112

---

[5] Ill. Rev. Stat. (1955) ch. 68, par. 52(f). The Uniform Reciprocal Enforcement of Support Act, Ill. Rev. Stat., ch. 68, par. 50 et seq., was adopted in 1955. Paragraph 52(f) imposed the duty of support for the entire period here at issue and was effective until the adoption of the Revised Uniform Reciprocal Enforcement of Support Act in 1969. The section provides:

(f) Children are severally liable for the support of their parents, if they are in need of such support and likely to become a public charge, and if possessed of sufficient means or able to earn such means may be required to pay for their support a fair and reasonable sum, and when there are two or more such children the court may determine and assess the proportionate ability of each to contribute to such support.

and 402 of the Public Assistance Code [6] both imposed such liability upon the children of indigent parents during the period of support here at issue. Both statutes provide means of enforcement.

Plaintiff contends that the imposition of this liability by the legislature also imposed a duty upon children to share the responsibility of support on an equal basis, so far as they are financially capable. This implication is to be drawn from the policy of the statutes, general equitable principles and from the policy arguments which generally support actions for contribution between common obligees.

Plaintiffs also rely on *Shaver v. Brierton* (1954) 1 Ill.App.2d 192, 117 N.E.2d 298, as specifically authorizing this type of contribution action. That decision affirmed a judgment for the plaintiff against her brother for one-third of the value of services rendered by her in the care and maintenance of her mother. In affirming the judgment, the court stated the common law rule that an adult child is under no duty or obligation to contribute to the support of his parents and indicated that whatever duty rests upon him in that respect must be based upon either contract or statute. The court took note of section 439—2 of the Illinois Public Assistance Code [7] in effect at the time, which provided that:

---

[6] Ill. Rev. Stat. (1961) ch. 23, par. 112 and 402. On May 1, 1963, the date that support of Yetta Strauss by the plaintiffs allegedly began, par. 112 provided, in pertinent part:

112. RESPONSIBILITY FOR SUPPORT—ENFORCEMENT. Every person who shall be in need and unable to earn a livelihood in consequence of any unavoidable cause shall, except as herein otherwise provided, be supported by his spouse or person holding himself out to be his spouse, father, mother, a person in loco parentis to a child, children, brothers, or sisters if they or either of them be of sufficient ability.

This section was amended in 1963 and 1965, but imposed the same liability until repealed on Aug. 1, 1967, with the enactment of ch. 23, par. 10—2, not here applicable.

Par. 402 provided in part:

402. RESPONSIBILITY OF RELATIVES. Every person who is in need and unable to earn a livelihood in consequence of any unavoidable cause shall be supported by his spouse or person holding himself out as his spouse, father, mother, the person in loco parentis to a child, children, brothers or sisters if they or either of them be of sufficient ability. The spouse or person holding himself out as his spouse shall first be called upon for such support. The children or parents, as the case may be, of such person shall next be called upon for such support, and if there are no children or parents of sufficient ability, then the person in loco parentis to a child, then the brothers or sisters of such person shall be called upon.

This paragraph was amended in 1963, but imposed the duty of support until its repeal in 1965. The paragraph remained the enforcement provision supplementing paragraph 112, set out above, of the same chapter.

[7] Ill. Rev. Stat. (1953) ch. 23, par. 439—2. This paragraph was later repealed and the language incorporated into paragraph 112 of the same act. See note 6, *supra*.

"* * * every person who shall be in need and unable to earn a livelihood in consequence of any unavoidable cause shall be supported by his father, mother, children, brothers or sisters if they, or either of them, are of sufficient ability * * *."

The section included provisions for enforcement by either the indigent party or the State's Attorney of the county. The court then said, at page 198:

"It is true that a person cannot claim the right to keep a relative and charge his or her support partly or wholly to another, but where there are two children equally liable and of sufficient financial ability and one supports while the other refuses, the one supporting may recover contribution from the other refusing * * *."

After an extensive review of the evidence, the court held, at page 199:

"The jury were [sic] justfied in finding that she had no financial means and was in need of help and care in consequence of an unavoidable cause and that about the middle of March, 1950, plaintiff asked the defendant to share her maintenance and to contribute to her support and that he refused, although financially able to do so. Applying the provisions of our statute to these facts, we believe the jury was warranted in making the finding it did and that the verdict is not contrary to the law and evidence as contended by appellant."

Plaintiff contends that the *Shaver* case established the law in Illinois relative to contribution between those liable for parental support under the statutes and that the trial court erred when it refused to follow that decision.

■■ We note, however, that the cited provision of the Public Assistance Code relied upon in *Shaver*, which was decided in 1954, was the only statutory authority available at the time. In 1955, the legislature enacted the Uniform Reciprocal Enforcement of Support Act.[8] Section 52(f) of that act imposed liability upon children for the support of their indigent parents and supplemented the Public Assistance Code. Even though the language of section 439—2, later incorporated into section 112, remained in effect and relatively unchanged until 1967 when it was repealed, the uniform act of 1955, which was in effect for the entire period of support here at issue, was supplemental to and *in pari materia* with the first statute. It imposed the same liability and means of enforcement as sections 439—2, 402 and 112 of the Public Assistance Code and constituted a legislative expression of the type of relationship initially imposed. For this reason, in controversies occurring during the period

---

[8] Ill. Rev. Stat. (1955) ch. 68, par. 50 *et seq.*

of their concurrent effectiveness, as here, the acts must be construed together to give effect to the relationships they created.

The two statutes, although concurrently imposing a statutory liability of support, were not identical. Section 52(f) contained a reference to the type of liability created which we believe effectively forecloses the plaintiffs' arguments. That section provides that "Children are *severally* liable for the support of their parents \* \* \*." [emphasis ours.] While this wording unquestionably creates the status of pecuniary liability from child to parent, it also expresses a legislative intent as to the relationship between those liable. The addition of the word "several" to describe the liability, a word that was not included in either section 439—2, 402 or 112 of the Public Assistance Code, characterizes the legal status between those persons upon whom the duty is imposed. Thus the statute created a "several obligation."

■■■■ A "several obligation" has been defined as one by which one individual, or, if there be more, several individuals, are bound separately to perform. (2 Bouv. Law Dict.) In *Golden v. Cervenka* (1917), 278 Ill. 409, our Supreme Court held that a liability of certain stockholders to corporate debtors created by the Constitution was "several" and described the relationship, at pages 435, 436:

"The stockholder's liability created by the Constitution is to the creditors of the corporation, and is a several and individual liability on the part of each stockholder to each creditor. It is not a liability to the corporation or to the creditors of the corporation as a class, but to each individual stockholder. Therefore, it is the creditors, alone, individually or collectively, who can enforce the liability by such remedies as the law affords. [citations omitted]."

Thus, when individuals are severally obligated, the relationship between them is distinctly divided. Whether one individual fulfills a several obligation or not has no effect upon the duty of any other obligor. His obligation is strictly individual. On the other hand, an action for contribution is dependent upon a common obligation and performance by one of more than his aliquot share of the burden. Since this is impossible where the obligation is several, there can be no action for contribution.

■■ The legislature inserted the word "several" into section 52(f) to describe the liability it was creating. Applying the plain meaning of the word to give effect to the intent of the legislature, we hold that there has been a positive legislative expression, supplementing sections 112 and 402 of the Public Assistance Code and subsequent to the decision in *Shaver v. Brierton, supra,* that, as between obligors under either statute, contribution actions based upon this liability are not allowed.

■■ We believe that the motivation of the legislature in creating a

several obligation is relatively clear. It has long been the policy of the law to discourage any disruption of family unity. To allow contribution suits between children to apportion the responsibility of parental support may, at first glance, seem equitable. However, litigation of this nature always carries with it a large measure of acrimony and dissension which, when the parties are members of the same family, promotes more harm than the strict application of equitable principles. We believe that the legislature, in enacting the statute in this form, manifested its desire, not only to provide for the support of indigent parental members of the family, but also to allay internal family strife.

■■ We are further convinced of this interpretation by the enforcement provision contained in section 52(f). It states that " * * * when there are two or more children the court may determine and assess the proportionate ability of each to contribute to such support." This provision allows the court, when assessing the liability in the enforcement action, to apportion it among the obligors in its discretion based upon their relative affluence. The effective result is to enforce a limited contribution in the same proceeding as the one in which the liability is enforced. Allowing a contribution action outside of such a proceeding would provide an alternative means of apportioning liability, and we do not believe the legislature intended such a result.

Plaintiffs further contend, however, that the statute makes no provision for apportionment of the liability when some of the obligors voluntarily discharge their responsibility without enforcement action, and others refuse. In that case, there is no recourse outside of the statutory proceeding, and those who have volunteered support cannot even bring such an action to enforce apportionment because they are not parties with standing under the statute. Plaintiffs contend that the law should not require them to refuse to support the indigent parent in order to be entitled to contribution, and that we should allow contribution under these circumstances.

■■ However, in creating the liability and remedy embodied in sections 112, 402 and 52(f), the legislature conditioned their application upon the failure of voluntary support by the children. In doing so, they have assumed the existence of a generally recognized moral responsibility imposing the same duty of support as do the statutes. In the vast majority of instances, this support is voluntarily and freely provided and, it may be assumed, shared. In those situations, the imposition of neither a legal liability nor a legal remedy is necessary. It is only when support has been refused that the legislature has authorized judicial intervention, imposing legal sanctions. Here, the plaintiffs ask us to extend the legal liability created by the statutes to a situation where support was voluntarily

408

given. It is apparent that the statutes relied upon impose the right and remedy concurrently and that both are conditioned upon the failure to support. We would be going beyond the authority granted by the statute if we extended the liability to this situation to give plaintiffs a basis for their contribution action. The contention is therefore wthout merit.

We hold that the court below did not err in dismissing the complaint for failure to state a cause of action. The judgment is affirmed.

Judgment affirmed.

LEIGHTON and SCHWARTZ, JJ., concur.