BETTY RAISL, Special Adm'r of the Estate of Mildred Raisl, Deceased, Plaintiff-Appellant, v. ELWOOD INDUSTRIES, INC., Defendant-Appellee.

First District (2nd Division)   No. 84—1245

Opinion filed June 11, 1985.

Edward L. Osowski, of Chicago, for appellant.

Jenner & Block, of Chicago (Robert E. Pfaff, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

In June 1982, Mildred Raisl, a former employee of defendant corporation, filed a complaint in the circuit court of Cook County alleging that defendant was guilty of retaliatory discharge in that it had dismissed her because she had filed a workers' compensation claim. Count I of the complaint sought compensatory damages; count II sought punitive damages. Mildred Raisl died in 1983, and her sister Betty Raisl (plaintiff) was appointed special administrator to prose-

cute this action.

Following Mildred Raisl's death, defendant moved to dismiss this action, claiming that both counts of the complaint abated upon the death of the plaintiff employee. Following written and oral arguments, the trial court granted defendant's motion and dismissed both counts of the complaint.

The two issues presented in this appeal are: (1) whether an action for retaliatory discharge seeking compensatory damages abates upon the death of the employee; and (2) whether an action for retaliatory discharge seeking punitive damages abates upon the death of the employee.

■ The cause of action for retaliatory discharge was first recognized by our supreme court in *Kelsay v. Motorola, Inc.* (1979), 74 Ill. 2d 172, 384 N.E.2d 358. Although the court acknowledged that the Workers' Compensation Act provided only for criminal, not civil, penalties for employers who fired workers for exercising their rights under the Act, the court held that a tort cause of action for retaliatory discharge was necessary to uphold and implement the significant public policy underlying the Act. The court found that the "fundamental purpose of the Act" was:

"to afford protection to employees by providing them with prompt and equitable compensation for their injuries. [Citation.]

The Workmen's Compensation Act, in light of its beneficent purpose, is a humane law of a remedial nature. [Citation.] It provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of the State. Consequently, its enactment by the legislature was in furtherance of sound public policy. [Citation.] We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge." (74 Ill. 2d 172, 180-81.)

The court observed that this cause of action was not akin to a contract action but was a "separate and independent tort." 74 Ill. 2d 172, 187.

In Illinois, the determination of whether an action abates upon the plaintiff's death is governed by common law rules and the statutory provisions changing the common law. Such decision depends upon the nature of the cause of action involved. See *McGill v. Lazzaro* (1978), 62 Ill. App. 3d 151, 379 N.E.2d 16.

The common law distinguished between those actions which survive and those which abate based upon the type of injury the deceased plaintiff had suffered. "If the interest to be protected was primarily a property interest, then the action survived; however, if the interest

was primarily personal, the action was held to abate. [Citation.]" (*Shapiro v. Chernoff* (1972), 3 Ill. App. 3d 396, 403, 279 N.E.2d 454.) At common law, the death of either party abated tort actions. *Butterman v. Chamales* (1966), 73 Ill. App. 2d 399, 220 N.E.2d 84.

The Illinois survival statute changed the common law to allow representatives of the deceased to maintain an action which had accrued during the deceased's lifetime. (*Merrihew v. Chicago City Ry. Co.* (1900), 92 Ill. App. 346.) The statute does not create a statutory cause of action. It merely permits a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died. *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919.

In relevant part, the Illinois survival statute provides:

"In addition to the actions which survive by the common law, the following also survive: *** actions to recover damages for an injury to real or personal property ***." (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6.)

Early interpretations of the survival statute were very restrictive. (See, *e.g., Holton v. Daly* (1882), 106 Ill. 131.) Beginning with *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 163, our supreme court began to interpret the statute more expansively.

In *McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 216 N.E.2d 140, the court held that a wrongful death action was "personal property" under the survival statute and therefore survives the death of the decedent. The court there overruled its own prior decisions which had construed the term "personal property" in the survival statute to apply only to "tangible" or "chattel" property which could be "seen and handled."

"We think the statute ought no longer be given such a narrow, technical construction. Whatever may be the distinction between a property right in its most general sense and 'real or personal property,' we cannot consider property tangible merely because people usually thought of it that way in the 19th century. Such a rule of statutory construction would lead to absurd consequences and would largely defeat the object of the Survival Act in modern society. Broad terms like 'personal property' must be construed with reference to the conditions of present-day life. ***. The act involved here does not say 'goods and chattels,' as it might well have done had it contemplated the narrow scope given to it in the [earlier] cases. Instead it employs the all-embracing term 'personal property.' The word 'property' is a generic term and its meaning in any case must

be determined by the sense in which it is used." 34 Ill. 2d 487, 490-91.

The court stated that "there is no reason why an estate that has been injured or depleted by the wrong of another should not be compensated whether the injured party is living or not. [Citation.] The rule of abatement has its roots in archaic conceptions of remedy which have long since lost their validity. The reason having ceased the rule is out of place and ought not to be perpetuated." 34 Ill. 2d 487, 494.

In *Walter v. Board of Education* (1982), 93 Ill. 2d 101, 108, 442 N.E.2d 870, the court, citing to *McDaniel,* decreed: "The Survival Act is a remedial statute and is liberally construed to prevent abatement."

In reliance on these holdings, we believe that count I of the complaint here, seeking compensatory damages for retaliatory discharge, is "personal property" within the meaning of the survival statute.

It has also been recognized that a "second test has been widely applied to determine whether a specific action survives. If the right asserted in an action is assignable, it has been held that it survives the death of either party. [Citation.]" (*Shapiro v. Chernoff* (1972), 3 Ill. App. 3d 396, 403, 279 N.E.2d 454.) In *Kelly v. Chicago Park District* (1950), 341 Ill. App. 37, 92 N.E.2d 782, the court found that an action for back wages resulting from plaintiff's wrongful termination from employment was "assignable, and therefore survived the deceased." (341 Ill. App. 37, 45.) Applying this second test, we find that count I of the complaint herein survived. We hold that the trial court erred in dismissing count I of plaintiff's complaint.

■ The second issue raised here is whether count II of the complaint, seeking punitive damages for retaliatory discharge, survives or abates.

In *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509, the supreme court held that the survival statute does not authorize the award of punitive damages in those actions surviving under it.

"This statute has never been thought to authorize the award of punitive damages ***. We find nothing *** which suggests a change in the law of this State which for more than a hundred years has limited recovery under the Survival Act to compensatory damages."

In *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919, the court upheld recovery of punitive damages in an action brought under the survival statute because the underlying

cause of action was based on the Illinois Public Utilities Act which itself allowed for punitive damages.

"The Survival Act itself neither authorizes nor prohibits punitive damages. It is merely the vehicle by which the cause of action, created by the Public Utilities Act, survives the death of the injured person when the action would otherwise have abated at common law. Unquestionably, the Public Utilities Act intends to punish an offender and discourage similar offenses by allowing punitive damages to be awarded whenever an injury results from a defendant's wrongful and wilful statutory violation. It would pervert the Act's intention if reprehensible conduct, so severe in consequence that resultant injury, culminating in death, was to be insulated from punitive liability under the very act designed to vigilantly promote safety by public utilities. Punitive damages for injuries prior to death should be unaffected by the subsequent death of the injured person, for punitive recovery addresses only the nature and gravity of a defendant's wrongful and wilful act." 73 Ill. 2d 160, 174.

In *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 456 N.E.2d 131, the supreme court reaffirmed both the *National Bank* and *Mattyasovszky* holdings with regard to the survival of punitive damage claims.

"The conclusion that is ordained on the basis of the above analysis of *Mattyasovszky* and *National Bank* is clear. Because there is no statutory basis for the award of punitive damages in these cases comparable to the provisions of the Public Utilities Act ***, we must regard *Mattyasovszky* as the controlling precedent. Under *Mattyasovszky* the plaintiffs' claims cannot survive the death of the injured persons.

We are unwilling to accept the plaintiffs' invitation to overrule *Mattyasovszky* and add to the scope of the Survival Act by including within it common law. claims for punitive damages based upon an injury to the person." 98 Ill. 2d 324, 335.

In our opinion, the instant case does not fall squarely within the strictures of the *Mattyasovszky, Froud* or *National Bank* cases.

In *Mattyasovszky* the court was faced with the question of whether punitive damages should survive the injured party's death in a wrongful death action alleging wilful and wanton misconduct. The court observed that the purpose of punitive damages was "primarily to punish the offender and to discourage other offenses." The court stated that the "underlying strength of these objectives of punishment and deterrence varies substantially from case to case" from the

"intentional [misconduct] which is also a crime" to allegations of wilful and wanton conduct, "a characterization that shades imperceptibly into simple negligence." (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35.) The court suggested that punitive damages were more appropriately applicable to acts of intentional misconduct since such misconduct was "clearly defined. That is not so when the question is whether the conduct of the defendant can be characterized as either negligence or willful and wanton ***." (61 Ill. 2d 31, 36.) Weighing the equitable considerations attendant, the court noted that "the single occurrence involved in the case before us already gives rise to two distinct statutory actions." The opinion also observed that the person whose conduct was "primarily responsible for the injury" was no longer a party and that "the punitive and admonitory justifications for the imposition of punitive damages are sharply diminished in those cases where liability is imposed vicariously. [Citations.]" (61 Ill. 2d 31, 36, 37.) Concluding that no "strong equitable considerations" required an opposite decision, the court denied recovery of punitive damages.

In *National Bank,* the court found that the punitive damage claim there survived because "[t]hat claim [for punitive damages under the Public Utilities Act] is an integral component of the regulatory scheme and of the remedy which is available under it: it can no more be diminished by common law doctrines such as abatement than a statutory limitations period can be eroded by such equitable doctrines as tolling." *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 332-33.

In *Froud* the court held that punitive damage claims for wilful and wanton misconduct did not survive decedents' deaths. However, the court reaffirmed its conclusion in *Mattyasovszky* that an action for punitive damages would survive "where 'strong equitable considerations' existed such as the unavailability of any other remedy." 98 Ill. 2d 324, 330.

We interpret the supreme court's opinions in *Mattyasovszky, National Bank* and *Froud* to hold that punitive damages claims will survive when either: (1) there exists a "statutory basis" for such claims or when such claims are an "integral component of the regulatory scheme and of the remedy which is available under it"; or (2) "strong equitable considerations" advocate survival. We find that these factors obtain in the instant case.

■ Although the retaliatory discharge tort, and the award of punitive damages therefor, were not expressly provided for by the legislature in the Workers' Compensation Act, we believe that such claims do have a statutory basis. The supreme court has stated that the pub-

lic policy of allowing injured workers to "freely file" compensation claims was "clearly mandated by the legislative enactment of the Workmen's Compensation Act as a comprehensive scheme for providing prompt and equitable compensation to injured workers." (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520.) Thus, an action for retaliatory discharge is based upon the public policy enunciated in the Workers' Compensation Act.

So also the supreme court has emphasized the crucial role which punitive damages play in protecting against violations of this statutory comprehensive scheme for protecting workers. The court has held that punitive damages are both: (1) the only effective deterrent to employer violations of this public policy; and (2) necessary to afford wrongfully discharged employees a complete remedy.

> "In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workmen's compensation claim. For example in this case, the plaintiff was entitled to only $749 compensatory damages. *** In the absence of other effective means of deterrence, punitive damages must be permitted to prevent the discharging of employees for filing workmen's compensation claims." *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186-87.

In *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280, the court stated:

> "In *Kelsay,* an essential factor in providing the action for retaliatory discharge was a recognition of the importance of permitting the allowance of punitive damages against the offending employer.
>
> * * *
>
> If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of this State." 105 Ill. 2d 143, 149-50.

We believe that the significant role of punitive damages in these cases provides strong equitable considerations which warrant holding that punitive damage claims survive the death of decedent. The supreme court has repeatedly held that a retaliatory discharge is "offensive to the public policy of this State ***." (*Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 161, 473 N.E.2d 935. See also *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 150; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181.) To hold that punitive dam-

age claims abated would be to weaken the only effective means of deterring violations of this public policy and to afford victims only an incomplete remedy.

We conclude that punitive damages in these cases are necessary to further the public policy of this State, to punish its violators and to afford a complete remedy to unlawfully discharged employees.

Based upon the foregoing, we hold that an action for retaliatory discharge predicated upon the Workers' Compensation Act and seeking punitive damages survives the death of the discharged employee. Therefore, the trial court erred in dismissing count II of the complaint.

The trial court's order of dismissal is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

STAMOS, P.J., and HARTMAN, J., concur.