MILDRED BRYANT, Indiv. and as Ex'r of the Will of D. Eugene Bryant, Deceased, Plaintiff-Appellant, v. KROGER COMPANY, Defendant-Appellee.

Third District   No. 3—90—0235

Opinion filed April 17, 1991.

Safford, West, Tornow & Jaeger, of Peoria (Medley A. Tornow, of counsel), for appellant.

Stephen R. Swofford, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Edward T. Habecker, of Thomas & Hinshaw, Culbertson, of Peoria (Terrence K. McGrath, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Mildred Bryant, as executor of the will of D. Eugene Bryant, deceased, appeals a determination by the trial court dismissing the estate of Eugene Bryant's cause of action for loss of consortium. We reverse.

The plaintiff, Mildred Bryant, filed a complaint contending she sustained injuries on December 16, 1987, as a result of a fall which occurred on defendant's premises and arose out of defendant's negligence. The plaintiff's husband, D. Eugene Bryant, died November 13, 1989. Mr. Bryant, by his executor, Mildred Bryant (hereinafter plaintiff), filed as count I of the complaint an action for damages experienced by Mr. Bryant as a result of the loss of consortium of his spouse from December 16, 1987, to the date of his death, November 13, 1989. Defendant filed a motion to dismiss count I of plaintiff's complaint on the basis that a loss of consortium action did not survive the death of the plaintiff. After a hearing and submission of legal memoranda, the trial court dismissed count I of the plaintiff's complaint with prejudice.

The sole issue for appeal is whether plaintiff's cause of action for loss of consortium survives or abates at his death.

■ In Illinois, the determination of whether an action abates upon the plaintiff's death is governed by common law rules and the statutory provisions which, in effect, change the common law. Such decision depends upon the nature of the cause of action involved. See *McGill v. Lazzaro* (1978), 62 Ill. App. 3d 151, 379 N.E.2d 16.

■ The common law distinguished between those actions which survive and those which abate based upon the type of injury the deceased plaintiff had suffered. "If the interest to be protected was primarily a property interest, then the action survived; however, if the interest was primarily personal, the action was held to abate. [Citation.]" (*Shapiro v. Chernoff* (1972), 3 Ill. App. 3d 396, 403, 279 N.E.2d 454.) At common law, the death of either party abated tort actions. *Butterman v. Chamales* (1966), 73 Ill. App. 2d 399, 220 N.E.2d 84.

■ The Illinois survival statute changed the common law to allow representatives of the deceased to maintain an action which had accrued during the deceased's lifetime. (*Merrihew v. Chicago City Ry. Co.* (1900), 92 Ill. App. 346.) The statute does not create a statutory cause of action. It merely permits a representative of the decedent to maintain those statutory or common law actions which have already

accrued to the decedent before he or she died. *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919.

The Illinois survival statute provides, in relevant part:

"In addition to the actions which survive by the common law, the following also survive: *** actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property ***." (Ill. Rev. Stat. 1989, ch. 110½, par. 27—6.)

Early interpretations of the survival statute were very restrictive. (See, *e.g., Holton v. Daly* (1882), 106 Ill. 131.) However, beginning with *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 163, our supreme court began to interpret the statute more expansively.

In *McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 216 N.E.2d 140, the court held that a wrongful death action was "personal property" under the survival statute and therefore survived the death of the decedent. The court there overruled its own prior decisions which had construed the term "personal property" in the survival statute to apply only to "tangible" or "chattel" property which could be "seen and handled."

"We think the statute ought no longer be given such a narrow, technical construction. Whatever may be the distinction between a property right in its most general sense and 'real or personal property,' we cannot consider property tangible merely because people usually thought of it that way in the 19th century. Such a rule of statutory construction would lead to absurd consequences and would largely defeat the object of the Survival Act in modern society. Broad terms like 'personal property' must be construed with reference to the conditions of present-day life. The fact that particular forms of it were not in existence at the time of enactment, or were not specifically contemplated by the lawmakers, does not limit the application of the statute. Legislative enactments which are prospective in operation, and phrased in terms comprehensive enough to include things of the same class subsequently coming into existence, should be held applicable where such is consistent with the general legislative purpose. The act involved here does not say 'goods and chattels,' as it might well have done had it contemplated the narrow scope given to it in the *Wilcox* and *Jones* cases. Instead it employs the all-embracing term 'personal property.' " 34 Ill. 2d at 490-91.

The *McDaniel* court held that a loss of support action could also be encompassed within the definition of "personal property" and survive the death of the decedent.

"The word 'property' is a generic term and its meaning in any case must be determined by the sense in which it is used. Looking at the context in which 'personal property' is used here, and at the object of the Survival Act as a whole, we can see no good reason why the ordinary meaning should not be given to the phrase so as to include the cause of action on behalf of next of kin to recover for loss of support." 34 Ill. 2d at 491.

The *McDaniel* court stated further that "there is no reason why an estate that has been injured or depleted by the wrong of another should not be compensated whether the injured party is living or not. [Citation.] The rule of abatement has its roots in archaic conceptions of remedy which have long since lost their validity. The reason having ceased the rule is out of place and ought not to be perpetuated." (34 Ill. 2d at 494.) The common law rule of abatement evolved because tort actions were originally regarded as punitive. Today, however, damages for most torts are recognized as compensatory rather than punitive. Therefore, there is absolutely no reason why an estate that has been injured or depleted by the wrong of another should not be compensated whether the injured party is living or not. *McDaniel*, 34 Ill. 2d at 494.

Similarly, in *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, the supreme court discussed the disapproval of abatement and the enlarging of survival statutes. The court stated as follows:

"This disfavoring of abatement and enlarging of survival statutes has been general. In Prosser, Handbook of the Law of Torts (4th ed. 1971), at page 901, it is said: '[T]he modern trend is definitely toward the view that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event such as death should extinguish a valid action. Accordingly, survival statutes gradually are being extended; and it may be expected that ultimately all tort actions will survive to the same extent as those founded on contract.' And at page 906 Prosser observes that where there have been wrongful death and survival statutes the usual holding has been that actions may be concurrently maintained under those statutes. The usual method of dealing with the two causes of action, he notes, is to allocate conscious pain and suffering, expenses and loss of earnings of the decedent up to the

date of death to the survival statute, and to allocate the loss of benefits of the survivors to the action for wrongful death." 56 Ill. 2d at 429.

In *Walter v. Board of Education of Quincy School District No. 172* (1982), 93 Ill. 2d 101, 108, 442 N.E.2d 870, the court held that the teacher-plaintiff's *mandamus* action for reinstatement and back pay could be appealed by the executor of her estate and survived by virtue of the portion of the Survival Act allowing recovery for "actions to recover damages for an injury to *** personal property." (*Walter*, 93 Ill. 2d at 108.) The *Walter* court, citing to *McDaniel*, decreed: "The Survival Act is a remedial statute and is liberally construed in order to prevent abatement." *Walter*, 93 Ill. 2d at 108. See also *Raisl v. Elmwood Industries, Inc.* (1985), 134 Ill. App. 3d 170, 479 N.E.2d 1106 (wherein the court held that compensatory damages for retaliatory discharge were considered "personal property").

This court has considered the Illinois Survival Act (Ill. Rev. Stat. 1987, ch. 110½, par. 27—6) on two recent occasions. In *Stonestreet v. Iroquois County Sheriff's Merit Comm'n* (1986), 150 Ill. App. 3d 1092, 502 N.E.2d 862, this court cited *McDaniel* with approval and held that a suit by a police officer challenging his discharge by the sheriff and county commission did not abate with his death.

Likewise, in *Williams v. Palmer* (1988), 177 Ill. App. 3d 799, 532 N.E.2d 1061, this court held that plaintiff's cause of action for tortious interference with his contractual relations survived his death. The *Williams* court underscored its intent to follow the *McDaniel* case trend of expanding the boundaries of "personal property" under the Survival Act.

Other States have also followed the trend of the *McDaniel* court. For example, in the case of *Nathan v. Touro Infirmary* (La. 1987), 512 So. 2d 352, the supreme court of Louisiana held that a patient's claim for damages for medical malpractice did not abate on his death because his claim was, in essence, a property right. The court explained the interest as follows:

> "We next determine whether Herbert Nathan's action abated upon his death or whether it was a property right. C.C.P. art. 428 states:
>
>> 'An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal.' ***
>
> Thus, the code clearly provides generally that Herbert Nathan's action does not abate upon his death unless it is 'strictly personal.' In *Guidry v. Theriot*, 377 So. 2d 319, 323 (La. 1979), we

found that a victim's action for recovery of tort damages is not strictly personal and that C.C.P. art. 428 legislatively overruled 'the jurisprudence which had adopted the common law rule that a tort action abates on the death of the victim.' We specifically reaffirmed *J. Wilton Jones Co. v. Liberty Mutual Insurance Co.*, 248 So. 2d 878 (La. App. 4 Cir. 1971), which held that a victim's action to recover tort damages is not strictly personal, and is inherited by the beneficiary's heirs upon the beneficiary's death. See Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La. L. Rev. 1, 52 (1976).

C.C.P. art. 426 provides:

'An action to enforce an obligation is the property of the obligee which on his death is transmitted with his estate to his heirs, universal legatees, or legatees under a universal title, except as otherwise provided by law. An action to enforce an obligation is transmitted to the obligee's legatee under a particular title only when it relates to the property disposed of under the particular title.

These rules apply also to a right to enforce an obligation, when no action thereon was commenced prior to the obligee's death.'

In *Turner v. Southern Wheel and Rim Service, Inc.*, 332 So. 2d 770 (La. 1976), we had concluded that C.C.P. art. 428 and C.C.P. art. 426, the general principles regarding abatement of actions, were applicable to a worker's compensation claim; we held that the right of an obligee to enforce an obligation is his property that is transmitted upon his death to his heirs or legatees even where the obligee did not commence an action thereon, unless the obligation sought to be enforced is strictly personal. Under these statutory and jurisprudential authorities, Herbert Nathan's claim for damages for medical malpractice did not abate on his death." 512 So. 2d at 354.

Similarly, in the case of *Katz v. Filandro* (1987), 153 Ariz. 601, 739 P.2d 822, citing to the *McDaniel* case in a footnote, the Arizona Court of Appeals held that a claim for economic support became a property right in the beneficiary's estate where the beneficiary-plaintiff has died. The court concluded that even though the statutory beneficiary dies during the course of a wrongful death action, the claim for economic support vests as a property right in the estate and survives to his/her representative.

"There is support for this view in Arizona, where the courts have focused on the time of the wrongful death in determining the existence of beneficiaries, and not the time the action is brought or the time of trial. Professor Dobbs in his Handbook on the Law of Remedies (1973) ('Dobbs') states as follows:

> 'Courts are divided on the question whether there is any action at all for the decedent's death where the sole beneficiary dies. Some allow a recovery by the beneficiary's estate, some deny recovery altogether where the beneficiary has himself died, and some permit or deny recovery depending on whether suit was brought before or after the beneficiary's death.'

Dobbs, *supra*, at 569 (footnotes omitted). We hold that Bobbi's claim for loss of economic support survived her death for two reasons. First, it is not a claim specifically excluded under the terms of the survival statute. Second, we agree with the jurisdictions that have determined that the cause of action vests in the plaintiff/beneficiary immediately upon the wrongful death, becomes a property right in the beneficiary and survives to his representative. Once the cause of action has accrued, it is not extinguished by the death of a specific named beneficiary. 'The object of the revival statute and the wrongful death statute was to give and preserve to parties damaged a complete recovery and opportunity to recover complete loss sustained because of wrongful injury and death.' *Holmes v. City of New York*, 269 A.D. 95, 54 N.Y.S.2d 289 (1945)." 153 Ariz. at 605-06, 739 P.2d at 826-27.

■ The court in *McDaniel* allowed loss of support to survive under the Act. However, *McDaniel* did not address whether loss of consortium also survived under the Act. Therefore, in keeping with the approach of *McDaniel* and its progeny, we hold that plaintiff's claim for loss of consortium is "personal property" within the meaning of the Survival Act. Thus, plaintiff's claim for loss of consortium does not abate at death. We find the term "personal property" as used in the Act is comprehensive enough to include loss of consortium.

Claims for loss of consortium include, in addition to loss of support, elements of companionship, felicity and sexual intercourse. (See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) The legal theory underlying a loss of consortium claim was based upon the common law concept that the wife was the husband's chattel and that any injury to the wife constituted an injury to the husband's personal property for which he was entitled to compensation of damages. (See

*Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 438 N.E.2d 1187.) Obviously, the historical milieu with which the rule originated has been completely changed. Today, a wife is no longer viewed as her husband's chattel, but stands as his equal in the eyes of the law. *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.

Moreover, the property interest to be protected here does not rest on any medieval theory but on the injury done to the marital relationship. Consortium represents the interest of the injured party's spouse in the continuance of a healthy and happy marital life, and this cause of action seeks to compensate for injury done to that very relationship. (See *Millington v. Southeastern Elevator Co.* (1968), 22 N.Y.2d 498, 239 N.E.2d 897, 293 N.Y.S.2d 305.) We find "personal property" is a generic term which should not be limited to just tangible goods. The law must keep pace with changes in our society. Accordingly, consortium should be viewed as a type of personal property interest. Therefore, this interest requires coverage under the Survival Act.

Based on the foregoing, the decision of the trial court is reversed.

Reversed.

SLATER and BARRY, JJ., concur.