DONALD STONESTREET, Plaintiff-Appellee, v. THE IROQUOIS COUNTY SHERIFF'S MERIT COMMISSION *et al.*, Defendants-Appellants.

Third District   No. 3—86—0196

Opinion filed December 31, 1986.

Tony L. Brasel, State's Attorney, of Watseka, and Alexander L. Edgar, of Manion, Janov, Edgar, Devens & Fahey, Ltd., of Hoopeston, for appellants.

Ronald E. Boyer, of Watseka, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Defendants, the Iroquois County sheriff's merit commission (commission) and Sheriff Joseph C. Mathy, appeal from the judgment of the circuit court of Iroquois County which reversed the commission's decision that plaintiff, Donald Stonestreet, conducted himself in a manner unbecoming a police officer and tending to bring discredit upon the department. Defendants also appeal from the circuit court's grant of plaintiff's motion for substitution of parties when plaintiff died subsequent to the commission decision but prior to the circuit court's determination on review. The circuit court held that the action survived under the Illinois Survival Act (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6) and alternatively, that if the action was one that would otherwise abate on plaintiff's death, the litigation had proceeded to a point where it was ripe for decision and would not abate.

The conduct which the sheriff complained of consisted of a conversation with other deputies making allegedly false statements about the sheriff and State's Attorney and failure to report knowledge of a burglary. The statements were made during the course of a conversation between Stonestreet and two other deputies while on their way to visit another police officer who had been hospitalized. The three

deputies were in uniform but officially off duty. The statements made about the sheriff concerned various incidents that had occurred within the sheriff's department, and those about the State's Attorney alleged that he had a $1,000-a-day cocaine habit. The failure to report knowledge of a burglary allegation stemmed from Stonestreet's statement that he knew who had committed an area burglary but that he was not going to do anything about it until after the November 7, 1984, State's Attorney's election. Sheriff Mathy filed his complaint with the commission on October 31, 1984.

The commission found Stonestreet guilty of two counts of the five-count complaint filed by the sheriff and discharged him from service with the sheriff's department. Subsequent to the commission's determination, Stonestreet died and his attorney moved to substitute the plaintiff's widow, as administrator of his estate, as party plaintiff. The sheriff filed a motion to dismiss the suit on the basis that Stonestreet's death abated the action. The circuit court entered its judgment denying the sheriff's motion to dismiss, determining that the findings and decision of the commission were manifestly erroneous, and that even if the determination on the factual issues had not been manifestly erroneous, discharge was too severe a sanction for the violations alleged based on the facts and Stonestreet's prior record with the department. We affirm.

Initially, we must determine if the circuit court was correct when it determined that the action did not abate upon Stonestreet's death, or, alternatively, that the matter was ripe for decision. The Survival Act states, in pertinent part:

> "Actions which survive. In addition to the actions which survive by the common law, the following also survive: *** actions to recover damages for an injury to real or personal property ***." Ill. Rev. Stat. 1985, ch. 110½, par. 27—6.

■ The Illinois Supreme Court has held that the term "personal property" is not limited to "goods and chattels" in the context of the Survival Act. (*McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 216 N.E.2d 140.) In determining that an action for wrongful death did not abate upon the decedent's death, the court held:

> "Whatever may be the distinction between a property right in its most general sense and 'real or personal property,' we cannot consider property tangible merely because people usually thought of it that way in the 19th century. Such a rule of statutory construction would lead to absurd consequences and would largely defeat the object of the Survival Act in modern society. Broad terms like 'personal property' must be construed with

reference to the conditions of present-day life. The fact that particular forms of it were not in existence at the time of enactment, or were not specifically contemplated by the lawmakers, does not limit the application of the statute. Legislative enactments which are prospective in operation, and phrased in terms comprehensive enough to include things of the same class subsequently coming into existence, should be held applicable where such is consistent with the general legislative purpose. The act involved here does not say 'goods and chattels' \*\*\*. Instead it employs the all-embracing term 'personal property.' The word 'property' is a generic term and its meaning in any case must be determined by the sense in which it is used. \*\*\*

No reason appears why this species of property, an accrued claim for compensation for pecuniary injuries to the estate of the beneficiary, should be excluded from the act's application." 34 Ill. 2d 487, 490-91, 216 N.E.2d 140, 143.

■ Additionally, the Supreme Court of the United States had held that a property right exists in certain employment situations. In *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633, the court concluded that because the employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection. The discharge-for-cause scenario is identical in the present case and, therefore, we hold that Stonestreet did have a valid property interest which was protected by the Survival Act.

■ The circuit court also determined that, alternatively, even if the action did not survive under the statute, the action was ripe for decision under the dictates of *Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill. 2d 239, 252 N.E.2d 538. Had this action not survived the death of Stonestreet, the circuit court was correct in holding that this case was ripe for decision. Although, as defendants point out, *Tunnell* is factually distinguishable, it is reconcilable with the present case. In *Tunnell*, the plaintiff received a verdict in his favor at trial which was subsequently set aside and judgment entered for the defendant. The court pointed out that since plaintiff's motion for a new trial had been withdrawn, and if the appellate court decided the merits of the case in favor of the plaintiff, there was no need to retry it, for judgment could be entered on the verdict. The *Tunnell* court noted that this was a different situation than that presented by a case where both the verdict and the judgment were for the defendant in the trial court. The court stated that, in those cases, since the plaintiff did not have a verdict in his favor, if the judgment was re-

versed, no new trial could be had because the action had abated by his death. What was significant was the circumstance that all factual questions had been resolved before the plaintiff died. No new trial was required, and the reviewing court was in a position to determine the controversy on the merits. (43 Ill. 2d 239, 243-44, 252 N.E.2d 538, 540-41.) The holding in *Tunnell* is not limited by the outcome at the initial hearing as defendants contend. Rather, it provides for a determination of the case once all factual issues are resolved.

In this case, we realize that a new hearing cannot be had because of the death of Stonestreet. We also are aware of the fact that the relief of reinstatement of Stonestreet's position is unavailable. However, the circuit court realized that all factual issues had been determined. It was the function of the court simply to apply the applicable standard of review and resolve the case accordingly, which it did. Defendants contend that even if ripe for judgment, this was a case for dismissal and nothing would be gained by the proceeding. Defendants' assertion only scratches the surface. Stonestreet cannot be reinstated, but any back pay or other compensation would accrue to his estate to the benefit of his beneficiaries. The circuit court was correct in its determination that this case was ripe for judgment.

■ When confronted with the situation where an administrative agency has rendered its decision regarding the discharge of an employee, a reviewing court must first determine whether the agency's findings were against the manifest weight of the evidence and, second, if the findings were not against the manifest weight of the evidence, whether they were sufficient to provide the requisite cause for discharge. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) Consequently, if the first inquiry nets the result that the findings were against the manifest weight of the evidence, there is no need to address the second issue.

■ In reviewing findings of an administrative agency, although those findings are held to be *prima facie* true and correct, a reviewing court will set aside findings of fact if they are against the manifest weight of the evidence. (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 456 N.E.2d 998.) In order to substitute its judgment for that of the agency, the court must be able to conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident. We have determined that the circuit court was correct in its decision.

■ In this case, the court relied upon *Sicinski v. Will County Police Department Merit Com.* (1985), 131 Ill. App. 3d 966, 476 N.E.2d 808, as the basis for its opinion. The *Sicinski* court noted that a police department cannot be brought into disrepute unless the public had knowledge of the events. Defendants contend that because the officers were off duty at the time, this necessarily leads to the conclusion that the public became aware of the events since the officers would then be members of the public at large. We find no merit in this argument.

■ As to the other charge, the circuit court found no basis to conclude that Stonestreet was guilty of failing to report knowledge of a burglary. The record shows that there were no written policies in force concerning how or to whom a deputy was to turn over information. Furthermore, at the time Stonestreet allegedly received this information, both investigators and the sheriff were out of town for the week and, by the sheriff's own admission, in a situation like that, the deputy could make a judgment call as to what to do with the information based on its reliability. Finally, the trial court noted that once the sheriff did receive the information, several days elapsed before it was given to any investigator. There is no factual basis upon which the commission could have based its findings and, therefore, their determination was against the manifest weight of the evidence.

Since we have determined that the circuit court was correct in finding the decision of the commission to be contrary to the manifest weight of the evidence, there is no need to determine whether the discharge of Stonestreet was an excessive penalty.

For the foregoing reasons, the judgment of the circuit court of Iroquois County, reversing the decision of the commission, is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.