JOSEPH E. JOHNSON *et al.*, as Officers of the Motion Picture Machine Operator's Beneficial Association, *et al.*, Plaintiffs-Appellees, v. WESTERN AMUSEMENT CORPORATION, d/b/a The Oak Theatre, *et al.*, Defendants-Appellants.

First District (5th Division)    No. 84—0593

Opinion filed June 19, 1987.—Rehearing denied July 21, 1987.

L. Robert Artoe, of Chicago, for appellants.

Edward S. Margolis, of Teller, Levit & Silvertrust, P.C., of Chicago, for appellees.

JUSTICE PINCHAM delivered the opinion of the court:

Defendant, Joel H. Ross, appeals from an order entered by the circuit court of Cook County which granted plaintiff's motion for summary judgment in the amount of $73,690 as damages for defendants' failure to pay the Chicago Moving Picture Operator's Union (the union) and the beneficial association and trust the dues and welfare contributions under the terms of their collective bargaining agreement and in violation of the Illinois Wage Payment and Collection Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 39m—1 *et seq.*). We must determine whether the trial court's determination that Ross was personally liable for the dues and welfare contributions under section 14(a) of the Act was manifestly erroneous.

The facts are uncontested. In January 1980, Joel H. Ross, who was then president and chief operating officer of Western Amusement Corporation, d/b/a the Oak Theatre[1] (Western), entered into a collective bargaining agreement with plaintiffs which permitted defendants to withdraw funds from the salaries of employees for payment to the union and beneficial association and trust as dues and welfare contributions. Ross operated the theatre, issued the paychecks, withdrew the union dues and welfare contributions and made all disbursements for Western. Although he was required to pay the union dues and welfare contributions from January 1980 until June 1982, he made them solely from February through September 1981. When plaintiffs claimed that there was an outstanding balance of $82,073, Ross replied that he did not have the money.

Plaintiff then filed the instant complaint which stated, *inter alia*, that Ross had withdrawn $82,073 for dues and welfare contributions from employees' salaries but had not paid it to plaintiffs in accordance with the collective bargaining agreement. Defendants filed an appearance and a response. Subsequently, Western filed a petition for bankruptcy and was declared bankrupt. Plaintiffs then filed a motion for summary judgment against Ross which, *inter alia*, alleged that he had sole authority to issue checks for Western, that Western had entered the collective bargaining agreement which required it to make certain dues and welfare contributions to the Union and beneficial association and trust, that Ross made the payments only from February through September 1981, that $79,215 was owed to the beneficial association and trust and that $2,859 was owed to the Union.

---

[1]On August 10, 1982, the corporate defendants were declared bankrupt after they had filed a petition for bankruptcy in the United States District Court for the Northern District of Illinois. They are not parties to this appeal.

After considering the pleadings and arguments of counsel, the trial court entered a memorandum opinion and order that granted plaintiff's motion for summary judgment in the amount of $73,689 against Ross and found that he was personally liable for the dues and welfare contributions owed to plaintiffs under the collective bargaining agreement which defendants had failed to pay in violation of the Act.

The contention presented by Ross on review is that he was not personally liable for dues and contributions owed to plaintiffs because the evidence did not establish that he acted with "knowledge" or that he had "wilfully refused" to pay the wages as required by section 14(a) of the Wage Payment and Collection Act. (Ill. Rev. Stat. 1985, ch. 48, par. 39m—14(a).) However, plaintiffs argue that Ross became liable under the Act when he failed to make the wage payments as they became due.

Section 2 of the Act defines wages as "any compensation owed an employee by *** [his] employment contract or agreement." (Ill. Rev. Stat. 1985, ch. 48, par. 39m—2.) According to section 8, when provisions of a collective bargaining agreement require an employer to make contributions to an employee's benefit, trust or fund, the contributions are to be considered wages. Ill. Rev. Stat. 1985, ch. 48, par. 39m—8.

Other relevant provisions of the Act are as follows:

"All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1938, may be paid on or before 21 calendar days after the period during which they are earned." (Ill. Rev. Stat. 1985, ch. 48, par. 39m—4.)

"Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." (Ill. Rev. Stat. 1985, ch. 48, par. 39m—13.)

"(a) Any employer or any agent of an employer, who, being able to pay wages, final compensation, or wage supplements

and being under a duty to pay, wilfully refuses to pay as provided in ths Act, or falsely denies the amount or validity thereof or that the same is due, with intent to secure for himself or other person any underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due, upon conviction, is guilty of a Class C misdemeanor. Each day during which any violation of this Act continues shall constitute a separate and distinct offense." Ill. Rev. Stat. 1985, ch. 48, par 39m—14(a).

As we have indicated, Ross seeks to avoid personal liability under the Act by asserting that plaintiffs failed to prove that he acted "wilfully" or with "knowledge." We believe that the evidence showed that Ross was aware of his obligation to make the payment. His awareness of this obligation was shown by the fact that he made payments from February through September 1981. Further, in his deposition Ross stated that he was familiar with the terms of the collective bargaining agreement and that he knew it required defendants to pay dues and contributions to plaintiffs. As to the issue of wilfulness, we note that in *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 577, 369 N.E.2d 1279, and more recently in *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 29, 476 N.E.2d 413, our supreme court stated that wilful conduct was a voluntary, conscious and intentional act. *Bublick* and *Heartland* involved actions by the Department of Revenue to collect delinquent taxes under the Retailers' Occupation Tax Act (ROT) (Ill. Rev. Stat. 1985, ch. 120, par. 452½) from certain retailers. Defendants in each case claimed that they had been unable to pay their taxes because they did not have the money and that their conduct had not been wilful. The evidence showed that when defendants made retail sales, they collected taxes from customers but failed to comply with the ROT. Our supreme court concluded that defendants initially had the funds to pay their taxes but had intentionally used the revenue for other purposes and that they were liable for their conduct under the ROT.

In the instant matter, the evidence established that Ross had signed the collective bargaining agreement defendants had entered into with plaintiffs, that Ross was familiar with its terms and that Ross understood defendants' obligations under the agreement. As chief operating officer of Western, Ross operated the theatre, controlled disbursements, including the issuance of payroll checks, and withdrew money for dues and welfare contributions from wages to be paid to the union and beneficial association and trust. However, Ross did not make the payments required by the collective bargaining

agreement, even though when the dues and welfare contributions were initially owed, sufficient monies were available to Ross. According to the Act the funds withdrawn from the weekly payroll checks were wages owed to the employees and were to be paid to plaintiffs no later than seven days after the end of the weekly payroll period in which they had been earned. (Ill. Rev. Stat. 1985, ch. 48, pars. 39m—8, 39m—4.) Ross' failure to pay the dues and contributions pursuant to the collective bargaining agreement constituted a violation of the Act. Ross cannot now avoid personal liability under the Act and collective bargaining agreement by claiming that he does not have the money.

For the reasons stated, the order entered by the circuit court of Cook County granting plaintiffs' summary judgment for $73,690 against Ross is affirmed.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.