DARRELL R. WILLIAMS, Plaintiff-Appellant, v. MILEY E. PALMER *et al.*, Defendants-Appellees.

Third District   No. 3—88—0177

Opinion filed December 30, 1988.

Benassi & Benassi, P.C., of Peoria (Michael D. Gifford, of counsel), for appellant.

James M. Voelker, of Heyl, Royster, Voelker & Allen, of Peoria (Bradford D. Ingram, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiff, Darrell R. Williams, appeals from the order of the circuit court of Peoria County, dated February 26, 1988, dismissing his two-count amended complaint with prejudice. Taken with this case on appeal are the motions of defendants Miley E. Palmer (Palmer) and The Central Illinois Conference of the United Methodist Church (Conference) to dismiss appeal on the basis that plaintiff's cause of action abated due to his death on June 19, 1988.

Plaintiff was an ordained minister of the United Methodist Church and, prior to April 1984, served as pastor of Chillicothe United Methodist Church, Chillicothe, Illinois. He was subsequently assigned to churches in Bryant and White Chapel, Illinois. Defendant Conference is a voluntary unincorporated association of churches, headed by a bishop and having its offices in Springfield, Illinois. Defendant Palmer is a former district superintendent for the Conference's Peoria district.

Amended count I of plaintiff's complaint is directed against the

Conference for breach of contract for failing to follow certain provisions set forth in a document entitled the "Book of Discipline" (Book). Count II of the complaint alleged that Palmer tortiously interfered with plaintiff's contractual rights. Both counts, being substantially similar in form, allege in part as follows: that plaintiff was employed, retained and in the service of the United Methodist Church at the time of the events alleged and had been for more than 30 years; that the Conference is governed by the "Book of Discipline" published with the authority of the United Methodist Church by its duly appointed officials; that the Book is considered to be the book of law and constitutes the material terms and conditions of the Conference's employment; that ministers of the United Methodist Church (Church) agree when entering its employ to perform in accordance with the requirements of the Book in exchange for agreement of the Church and Conference; that the Book sets forth specific processes and procedures to be employed in making appointments of ministers such as plaintiff, including the requirement of "consultation"; that during 1983 and years prior thereto, plaintiff served as pastor of Chillicothe United Methodist Church, fulfilling his duties in a good and proper manner; that Palmer's duties as superintendent of the Conference's Peoria district include preliminary determination of appointments of ministers and fulfillment of the consultation process; that despite plaintiff's good and satisfactory work in his appointment, he was notified by Palmer that he would be assigned to another post, which would constitute a severe demotion in terms of the number of church members, compensation and opportunity for service; that the Conference, by and through its agent Palmer, breached its contractual undertaking with plaintiff in said transfer and appointment in failing and refusing to afford him the process of consultation.

█ We first consider whether plaintiff's causes of action abated with his death. In this regard, the Illinois Survival Act (Ill. Rev. Stat. 1987, ch. 110½, par. 27—6) states:

"In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 6—21 of 'An Act relating to alcoholic liquors' ." Ill. Rev. Stat. 1987, ch. 110½, par. 27—6.

■ Defendants maintain that amended count I of plaintiff's complaint prayed solely for reinstatement of his position as pastor of the Chillicothe United Methodist Church and therefore abated upon plaintiff's death by reason of impossibility. With this aspect of plaintiff's prayer we agree; however, plaintiff also prayed for damages based on the Conference's breach of contract. It has long been held that actions for breach of contract survive the death of a plaintiff. (*Parkway Bank & Trust Co. v. LeVine* (1977), 45 Ill. App. 3d 497, 359 N.E.2d 882.) As the Survival Act does not interfere with actions that survive at common law, plaintiff's claim in count I for damages survived his death.

As to count II, defendants rely on *Jones v. Barmm* (1905), 217 Ill. 381, 75 N.E. 505, for the proposition that plaintiff's cause of action against Palmer for tortious interference with his contractual relations abated with his death. In *Jones*, plaintiff brought an action against defendant for tortious interference with his business. After commencement of the case, defendant died and his administratrix was substituted as a party defendant. On appeal, the sole question was whether the action survived defendant's death. Recognizing that at common law actions in tort did not survive the death of a sole plaintiff or defendant, the court considered whether the survival statute in existence at that time (Hurd's Statutes 1903, ch. 3, par. 122) permitted survival of the action. The court concluded that the term "personal property" within the survival statute applied "only to actions for damages to tangible articles and things movable,—to chattels, as distinguished from actions for damages to one's business." *Jones*, 217 Ill. at 383, 75 N.E. at 506.

Although *Jones* has never been specifically overruled, we believe that later cases have expanded the perimeter of "personal property" under the Survival Act. In *McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 216 N.E.2d 140, the court considered whether a wrongful death action abated upon the death of a beneficiary. The court opined that the narrow, technical construction given the Survival Act by *Jones* and subsequent cases ought no longer be followed:

"Whatever may be the distinction between a property right in its most general sense and 'real or personal property,' we cannot consider property tangible merely because people usually thought of it that way in the 19th century. Such a rule of statutory construction would lead to absurd consequences and would largely defeat the object of the Survival Act in modern society. Broad terms like 'personal property' must be construed with reference to the conditions of present-day life. The fact that

particular forms of it were not in existence at the time of enactment, or were not specifically contemplated by the lawmakers, does not limit the application of the statute. Legislative enactments which are prospective in operation, and phrased in terms comprehensive enough to include things of the same class subsequently coming into existence, should be held applicable where such is consistent with the general legislative purpose. The act involved here does not say 'goods and chattels,' as it might well have done had it contemplated the narrow scope given to it in the *Wilcox* [*Wilcox v. Bierd* (1928), 330 Ill. 571, 162 N.E. 170] and *Jones* cases. Instead it employs the all-embracing term 'personal property.' The word 'property' is a generic term and its meaning in any case must be determined by the sense in which it is used. Looking at the context in which 'personal property' is used here, and at the object of the Survival Act as a whole, we can see no good reason why the ordinary meaning should not be given to the phrase so as to include the cause of action on behalf of next of kin to recover for loss of support." *McDaniel*, 34 Ill. 2d at 490-91, 216 N.E.2d at 143.

■ This court has recently had occasion to consider the Illinois Survival Act in *Stonestreet v. Iroquois County Sheriff's Merit Comm'n* (1986), 150 Ill. App. 3d 1092, 502 N.E.2d 862. In *Stonestreet*, this court cited *McDaniel* with approval and held that a suit by a police officer challenging his discharge by the sheriff and county commission did not abate with his death. Similarly, it has been held that actions for retaliatory discharge are personal property within the meaning of the Survival Act and, therefore, survive a plaintiff's death. (*Raisl v. Elwood Industries, Inc.* (1985), 134 Ill. App. 3d 170, 479 N.E.2d 1106.) Although it is true that plaintiff's count II sounds in tort, which at common law would not survive plaintiff's death, the underlying interest to be protected is a property interest based on breach of contract. Moreover, the Survival Act should be liberally construed as a remedial statute to prevent abatement. (*Walter v. Board of Education* (1982), 93 Ill. 2d 101, 442 N.E.2d 870.) In light of *McDaniel*, we see no reason for dismissing count II based on plaintiff's death. Excepting plaintiff's prayer in amended count I for specific performances, defendants' motion to dismiss appeal is denied.

■ The procedural posture of this case is that it is before this court based on the trial court's order granting defendants' motions to dismiss. Although the motions to dismiss have not been properly identified as to which section of the Code of Civil Procedure they were

brought, the basic allegation in the motions is that the court lacked subject matter jurisdiction. Generally, the allegations that a court lacks subject matter jurisdiction is proper for purposes of dismissal pursuant to section 2—619(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(1)). However, under section 2—619(a), "[i]f the grounds [for the dismissal] do not appear on the face of the pleading attacked the motion shall be supported by affidavit." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a).) No affidavits were attached to defendants' motions; therefore, the grounds for the dismissal must appear on the face of plaintiff's complaint.

■ The first issue is whether the trial court's lack of subject matter jurisdiction is apparent on the face of plaintiff's complaint. Both counts of plaintiff's complaint allege that his appointment was made by Palmer, acting in his capacity as superintendent of the Peoria District of the Conference; further, that the consultation process was not followed by the Conference prior to appointing plaintiff to a different location. The appointment-making and consultation procedure, as outlined in the Book, was attached as exhibit A to plaintiff's complaint. Defendants maintain that allowing plaintiff's claims for breach of contract and tortious interference with contract for lack of consultation prior to plaintiff's transfer would require the trial court to review subjective judgments made by religious tribunals. Clearly, the first and fourteenth amendments prohibit secular authorities from interfering with internal ecclesiastical workings and discipline of religious bodies. (*Watson v. Jones of the Russian Orthodox Church in North America* (1871), 13 Wall 679, 20 L. Ed. 666; *Kedroff v. Saint Nicholas Cathedral* (1952), 344 U.S. 94, 97 L. Ed. 120, 73 S. Ct. 143; *Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich* (1976), 426 U.S. 696, 49 L. Ed. 151, 96 S. Ct. 2372.) Plaintiff, however, asserts that the trial court has jurisdiction under the neutral principles of law approach first pronounced by the United States Supreme Court in *Jones v. Wolf* (1979), 443 U.S. 595, 61 L. Ed. 2d 775, 99 S. Ct. 3020, and later adopted in Illinois. (See *Aglikin v. Kovacheff* (1987), 163 Ill. App. 3d 426, 516 N.E.2d 704; *York v. First Presbyterian Church* (1984), 130 Ill. App. 3d 611, 474 N.E.2d 716; *Grace Evangelical Lutheran Church v. Lutheran Church—Missouri Synod* (1983), 118 Ill. App. 3d 151, 454 N.E.2d 1038.) More particularly, plaintiff considers this case as closely analogous to the prior cases of *Bodewes v. Zuroweste* (1973), 15 Ill. App. 3d 101, 303 N.E.2d 509, *Owens v. Second Baptist Church* (1987), 163 Ill. App. 3d 442, 516 N.E.2d 712, and *Aglikin*, cited above.

The trial court, in its order dated February 26, 1988, felt bound

by the decisions of *Serbian* and *Simpson v. Wells Lamont Corp.* (1974), 494 F.2d 490, in finding that "the subject matter of the instant case has to do with ecclesiastical matters and subjective judgments made by officials of a religious denomination relative to the transfer or appointment of plaintiff."

■ Our review of the complaint with the attached exhibit A and the cases cited by the parties warrants our conclusion that the basis for defendants' motions to dismiss for lack of subject matter jurisdiction is apparent on the face of the complaint. Plaintiff is asking the court to award damages for breach of contract because of defendant Conference's action of appointing plaintiff to a different post without providing consultation, a process wherein the bishop and/or district superintendent of the church organization confer with the pastor and pastor-parish relations committee about the appointment of the particular pastor in question, taking into consideration certain criteria as outlined in the Book. As indicated in exhibit A, consultation is apparently a required step in the appointment process. When making appointments, the empowered bishop of the conference is to take into account, among other things, the unique needs of the charge in a particular setting, as well as the gifts and graces of the particular pastor. In other words, the appointment of a pastor is a purely subjective decision to be made by the empowered bishop to advance the purpose of the church organization. Appointment is undoubtedly an ecclesiastical matter to which judicial deference is mandated by the first amendment. Whether or not the Conference followed required procedure in appointing plaintiff is not for a civil court to consider, because it would entail scrutinizing the appointment decision-making process and reviewing the subjective criteria used by the church organization in reaching its decision. Plaintiff's remedy is to appeal the decision of the empowered bishop to higher judicial tribunals within the church hierarchy. There is mention in the record that plaintiff had appealed his appointment to the highest judiciaries within the church organization, but such fact has not been properly verified by affidavit and is not properly of record. Nonetheless, if plaintiff has not appealed to higher church tribunals, that is his remedy. (*Simpson v. Wells Lamont Corp.* (1974), 494 F.2d 490.) If plaintiff has made such appeal and been denied relief, this court must defer to the decision of the church. See *Serbian*, 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372.

We acknowledge that the neutral principles approach has been judicially accepted in Illinois; however, that approach has been used primarily for disputes over ownership of church property. Moreover, the cases of *Bodewes*, *Owens* and *Aglikin* are not controlling because each

of those cases involved issues which could be determined without resort to review of purely ecclesiastical decisions concerning faith or doctrine. A civil court review of whether the Conference followed its procedure in the appointment process would be to review the subjective decision of the church organization for advancement of its purpose. Therefore, the decision of the trial court is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.