Henry H. **STAFFORD**, Jr., Plaintiff,

v.

**PUROFIED DOWN PRODUCTS CORP., a New York corporation, Louis Puro, Kenneth Mesnik, and Robert D. Levin, and Sena Puro, Co–Executors of the Estate of Arthur Puro (Deceased), Defendants.**

**No. 88 C 10205.**

United States District Court, N.D. Illinois, E.D.

Sept. 2, 1992.

James M. Gecker, Ross & Hardies, P.C., Chicago, Ill., for Henry H. Stafford, Jr.

Larry Glenn Axelrood, Stuart B Dubin, Ltd, Marc Craig Smith, Canmann, Chaiken, Rosenblum, Vandenberg & Smith, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court are the Magistrate Judge's April 21, 1992 report and recommendation, and objections to that report and recommendation by plaintiff Henry H.

Stafford, Jr. ("Stafford") and by defendants Sena Puro and Robert D. Levin as co-executors of the estate of Arthur Puro, and Louis Puro (collectively the "Puros"). For reasons that follow, all objections are denied and the defendants' motion for summary judgment is granted in part and denied in part.

The Magistrate Judge heard various defendants' motion for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 1.70(c)(1)(e). The Puros' objections to the report and recommendation were filed on May 5, 1992, and Stafford's objections were filed on May 8, 1992. The Puros and Stafford each filed a response to the other side's objections on May 22, 1992. Upon receiving the report and recommendation and the parties' objections thereto, the court is required to make a *de novo* determination and may accept, reject or modify the recommended disposition. Fed. R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C); *Delgado v. Bowen,* 782 F.2d 79, 81–82 (7th Cir.1986).

After a *de novo* review of the Magistrate Judge's report and recommendation, and of the record, the court finds that the report and recommendation is supported by the record and the cited authorities. The Magistrate Judge's recommendation is that Stafford's claim for punitive damages against the estate of Arthur Puro be dismissed.

The court has not found, nor have the parties cited, any Illinois statute or state court opinion deciding whether punitive damages are recoverable from the estate of a deceased tortfeasor under Illinois law. Therefore, in deciding the issue, the court must predict how the Illinois Supreme Court would rule had the question been before that court. *Ross v. Creighton Univ.,* 957 F.2d 410, 413 (7th Cir.1992).

Punitive damages under Illinois law may be allowed in some circumstances "in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 187–88, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978). "Because of their penal nature, punitive damages are not fa-vored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded." *Deal v. Byford,* 127 Ill.2d 192, 203, 537 N.E.2d 267, 272 (1989).

The great majority of jurisdictions which have ruled on the issue have rejected punitive damages against deceased tortfeasors, generally because the dead are beyond punishment and it would be unfair to impose such damages upon the deceased's heirs. *See, e.g., Doe v. Colligan,* 753 P.2d 144, 145–46 (Alaska 1988) ("Since the deceased tortfeasor cannot be punished, the general deterrent effect becomes speculative at best and thus ... falls short of furnishing a justifiable ground for an award of punitive damages against the tortfeasor's estate"); *Evans v. Gibson,* 220 Cal. 476, 489–90, 31 P.2d 389 (1934); *Lohr v. Byrd,* 522 So.2d 845, 846–47 (Fla.1988) ("separation of the 'punitive' and 'exemplary' aspects of such awards is unjustified because general deterrence logically depends upon the perception of punishment suffered by the wrongdoer. When that punishment is diffused and unjustly inflicted upon the innocent, through a doctrine analogous to attainder, the deterrent effect is frustrated") (quoting *Byrd v. Lohr,* 488 So.2d 138, 139 (Fla.Dist.Ct.App.1986)).

We predict that Illinois's high court would most likely follow the majority view and hold that punitive damages cannot be imposed against the estates of deceased tortfeasors.

Accordingly the April 21, 1992 report and recommendation is adopted in full, the Puros' motion for summary judgment is denied as to Counts II, IV and V and granted as to Count III of Stafford's second amended complaint, and Stafford's punitive damages claim against the Estate of Arthur Puro is dismissed.

IT IS SO ORDERED.

## APPENDIX A

### REPORT AND RECOMMENDATION

GOTTSCHALL, United States Magistrate Judge.

TO THE HONORABLE CHARLES R. NORGLE, SR., one of the Judges of the

United States District Court for the Northern District of Illinois.

This matter is before the court on defendants' motion for summary judgment. For the reasons set forth below, this court recommends that the motion be granted in part and denied in part.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff Henry H. Stafford, Jr. ("Stafford"), was hired by Purofied Down Products Corp. ("Purofied")[1] in 1979 to create and oversee specialty markets in which Purofied could distribute the down bedding and related products which it manufactured. P. Stmt. ¶ 1.[2] During the course of his employment with Purofied, Stafford created a network of independent sales agents for Purofied and a sales network which generated $2.5 million annually. P. Stmt. ¶¶ 2–3. A major focal point in this dispute is Purofied's Home Shopping Network ("HSN") account. It is undisputed that Stafford worked to develop the HSN account, although much or most of the revenue from the account came in after Stafford's employment was terminated on August 2, 1988. P. Stmt. ¶¶ 4, 48–49. At the time of Stafford's termination, defendant Arthur Puro was chairman of Purofied's board of directors. D. Stmt. ¶ 3.[3] Defendant Louis Puro was president and indirect 44 percent owner of the company.

Defendant Kenneth Mesnik was executive vice president.

Stafford alleges a scheme whereby defendants sought to deprive him of commissions to which he would have been entitled. According to Stafford, the scheme began in or around February 1988, when Mesnik began to meet secretly with HSN for the purpose of putting himself in a position to take over Stafford's accounts. P. Stmt. ¶ 53.[4] Commencing in June 1988, Mesnik wrote a number of memoranda criticizing certain aspects of Stafford's performance, particularly his decisions regarding advertising allowances. D. Stmt. ¶¶ 20–24, P. Stmt. ¶ 52. Although there had been other criticisms of this nature in the past, D. Stmt. ¶¶ 9–17, Stafford does not consider the earlier criticisms part of the alleged scheme to terminate him. D. Stmt. ¶ 19. On August 2, 1988, Mesnik informed Stafford that his employment was terminated. D. Stmt. ¶¶ 3, 25, P. Stmt. ¶ 5.

Throughout this period in 1988, Purofied was experiencing cash flow problems. Although Stafford had apparently been paid a base salary through June 1988, he contends that he had not received a salary check for July 1988, certain commissions for 1987 sales, reimbursements for business expenses and his car allowance. P. Stmt. ¶¶ 7–9, 11, 19. Stafford had repeatedly communicated with Mesnik and Arthur Puro regarding past-due commissions, expense reimbursements and other amounts

1. Purofied was originally named as a defendant in this action. Purofied filed for bankruptcy in August 1990 and is not pursued as a defendant in this action. D. Stmt. ¶ 2. Thus, defendants' motion does not address Counts I and VI of Stafford's second amended complaint ("complaint"), which was brought against Purofied only.

2. All references to "P. Stmt." are to Stafford's statement of additional facts, commencing at page 9 of his response under Local Rule 12(n) to defendants' statement of facts under Local Rule 12(m). References to Stafford's statement of facts also include defendants' responses thereto. Similarly, references to "D. Stmt." are to defendants' statement of facts under Local Rule 12(m) and Stafford's responses thereto.

3. Arthur Puro is deceased and was never deposed in this action. Robert D. Levin and Sena Puro, the co-executors of his estate have been named as defendants in this action.

4. As happens at several points in their responses to Stafford's factual allegations, defendants skirt the factual issue in their response. Thus, instead of denying the secret meetings, defendants "admit that Mr. Stafford's testimony states Mesnik began dealing with [HSN] without Stafford's knowledge, but denies that Stafford testified Mesnik's involvement began in February 1988." Under Local Rule 12(m), a fact not controverted in an opposing party's statement of facts is deemed admitted. *Skagen v. Sears, Roebuck and Co.,* 910 F.2d 1498, 1500 (7th Cir.1990). Where, as here, defendants neither admit nor deny the truth of allegations concerning their own actions, plaintiff's factual allegations are deemed admitted.

owed him. P. Stmt. ¶¶ 24, 26. There was, however, some disagreement concerning how Stafford was to be compensated after an expansion of his job responsibilities in 1988. Stafford contends that pending renegotiation of his compensation, his existing arrangement was to continue unchanged. D. Stmt. ¶ 18. Defendants take the position that at the time of his termination, Stafford had no determined compensation agreement. P. Stmt. ¶ 6. At the meeting where Stafford was informed of the termination decision, Mesnik told Stafford that unless Stafford signed a release, he (Mesnik) could not turn over one or more checks written to Stafford's order. P. Stmt. ¶¶ 15, 18, 44. The release provided for the payment of Stafford's 1987 bonus, travel expenses and a car allowance in return for the "unconditional release against Purofied for any and all past, current or future monies you may feel are owed to you." P. Stmt. ¶ 16; Mesnik Dep., Ex. 11. Stafford refused to sign the release.

Stafford contends that he was terminated just before the peak autumn sales period when most sales are consummated for purposes of determining commissions. P. Stmt. ¶ 45. Also, he was terminated at a point when the HSN account began to generate significant revenues. P. Stmt. ¶ 48. He alleges that a major reason for his termination was to avoid the payment to him of greatly increased commissions. P. Stmt. ¶¶ 46, 47, 49. Mesnik took over Stafford's accounts, allegedly receiving large commissions as a result. P. Stmt. ¶¶ 20, 58–59, D. Stmt. ¶ 29. The Puros also allegedly benefited from Stafford's termination in that more money was available for distribution to the owners of the business. D. Stmt. ¶ 29, P. Stmt. ¶ 57. As proof that he was wrongfully deprived of commissions, Stafford points to commission accruals that were entered on Purofied's books and then reversed after his termination. P. Stmt. ¶¶ 22–23.

Defendants respond that Stafford was terminated for unsatisfactory fulfillment of his responsibilities, especially those responsibilities relating to advertising credits. In addition, company management perceived him as insubordinate. Finally, defendants state that Stafford's termination reduced costs, since his duties could be reassigned to other employees without a need for a replacement. P. Stmt. ¶ 25. Defendants deny that there was any increase in compensation paid to Mesnik and the Puros after Stafford's termination and they deny that corporate funds were channeled to Windsor Trading Company, a related entity owned by Arthur Puro. D. Stmt. ¶ 29, P. Stmt. ¶¶ 12, 59. Defendants further maintain that accounting records of Stafford's commissions served a limited purpose of tracking sales and bonuses. P. Stmt. ¶¶ 21–23. There are certain unanswered questions concerning Mesnik's compensation, however, and defendants have provided an evasive response to Stafford's allegations concerning Windsor Trading. P. Stmt. ¶¶ 12, 59.

In this litigation, Stafford admits that his employment with Purofied was terminable at will. D. Stmt. ¶ 6. This being so, the focus is on compensation for work performed prior to termination, rather than damages stemming from wrongful termination of employment. Since any employment contract would have as parties Stafford and the bankrupt Purofied, Stafford's claims against defendants are based on alleged interference with his contract and business relationship with Purofied. Cmplt. Counts IV–V. Besides these two claims, and a third tort claim for wrongful termination in Count III, Stafford alleges a violation of the Illinois Wage Payment and Collection Act in Count II.

On this motion for summary judgment, defendants point to facts which they consider dispositive of the claims against each defendant. In the case of Arthur Puro, the more active owner of the business, defendants would avoid or limit liability on the basis that he is now deceased. Defendants would have claims against Louis Puro dismissed on the basis of a lack of direct evidence that he was involved in the decision to terminate Stafford. While Louis Puro signed company checks, defendants contend that his involvement in matters concerning Stafford was limited to the

signing of company checks. P. Stmt. ¶¶ 30–40, D. Stmt. ¶¶ 27, 36. Although the evidence suggests that Mesnik played an active role in the events set forth above, defendants emphasize that Mesnik lacked authority to sign company checks. There is, however, evidence that Mesnik had such authority. P. Stmt. ¶ 41.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1080 (7th Cir.1992). In considering the motion, the court views the record and all inferences therefrom in the light most favorable to the nonmovant. *First Bank Southeast, N.A. v. Predco, Inc.*, 951 F.2d 842, 846 (7th Cir.1992). Applying that principle here, this court first concludes that there are disputed questions of material fact concerning each defendant's involvement in the events giving rise to this dispute. Notably, defendants do not attempt to disassociate Arthur Puro from the decision to terminate Stafford or the wage payment claim. Stafford has also presented sufficient evidence of Louis Puro's involvement in these events to justify an inference that he played a role in the decisions to terminate Stafford and to withhold payments allegedly due him. P. Stmt. ¶¶ 30–40, D. Stmt. ¶¶ 27, 33. While Louis Puro may deny such involvement, these factual questions turn on the parties' credibility. Similarly, Stafford has produced sufficient evidence that Mesnik was involved in both decisions. P. Stmt. ¶¶ 34–36, 41–43. Nonetheless, despite these factual questions, summary judgment may still be granted if certain of defendants' legal arguments are correct. *See Fletcher v. Kroger Co.*, 942 F.2d 1137, 1140 (7th Cir.1991) (factual dispute does not preclude summary judgment unless disputed fact is outcome determinative under governing law). This report addresses each of those arguments in turn.

*Bad Faith Termination*

▪ In Count III of his complaint, Stafford argues that Purofied terminated his employment in bad faith and for the malicious purpose of depriving him of commissions to which he was and would be entitled. Under Seventh Circuit precedent, an employee at will may bring such a claim, despite the lack of an employment contract. *LaScola v. US Sprint Communications*, 946 F.2d 559, 566 (7th Cir.1991); *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 438 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988). *Jordan* adds that "an avowedly opportunistic discharge is a breach of contract...." *Id.*

In moving for summary judgment defendants argue that because Purofied terminated Stafford's employment, they cannot be held liable under this theory. Indeed, there is considerable overlap between this theory and the theories of tortious interference with contract and business relationships in Counts IV and V of the complaint. Plaintiffs argue, however, that one decision from this district has denied a motion to dismiss such a claim against individual defendants. *Manuel v. International Harvester Co.*, 502 F.Supp. 45, 51 (N.D.Ill. 1980). *Manuel* does not elaborate on its conclusion, although earlier in the opinion it found there could be individual liability based on the principle that corporate directors and officers are liable for their own torts, regardless of whether they acted on behalf of the corporation and regardless of whether or not the corporation is also liable. *Id.* at 49. Significantly, the complaint is *Manuel* did not include claims based on tortious interference theories. *See also Gordon v. Matthew Bender and Co., Inc.*, 562 F.Supp. 1286, 1297 (N.D.Ill.1983) (allowing claim but finding it unnecessary to determine whether it sounds in contract or tort).

▪ This court recommends that summary judgment be granted in favor of the individual defendants on Count III of Stafford's complaint. The holdings in *LaScola* and *Jordan* make it clear that the wrong complained of here is essentially one for bad faith in the performance of a contract. Since the defendants here were not parties to Stafford's contract, if any, with Puro-

fied, this claim is more properly brought under a theory of tortious interference with contract or business relationship.

### Tortious Interference Theories

In Count IV Stafford complains of defendants' tortious interference with his contractual relationship with Purofied. The elements of this cause of action are: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of that contract; (4) a breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Prince v. Zazove*, 959 F.2d 1395, 1397 (7th Cir.1992). Count V is a claim for tortious interference with business relationship. In the context of employment, the elements of this tort are: (1) a plaintiff's reasonable expectation of continued employment; (2) knowledge of the business relationship by the interferer; (3) intentional interference; and (4) resultant damage. *Marczak v. Drexel Nat'l Bank*, 186 Ill.App.3d 640, 134 Ill.Dec. 441, 444, 542 N.E.2d 787, 790 (1st Dist.1989). It is well-established that such an action, often termed one for interference with prospective economic advantage, may be maintained by an at-will employee. *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991). *See also Prudential Ins. Co. of America v. Sipula*, 776 F.2d 157, 162 (7th Cir.1985).

In arguing that summary judgment should be granted on these claims, defendants rely on the proposition that inducement of the cancellation breach of a contract at will is not interference with contractual relations. *LaScola v. US Sprint Communications*, 739 F.Supp. 431, 440 (N.D.Ill.1990), *aff'd*, 946 F.2d 559 (7th Cir. 1991). Indeed, this circuit has stated that an action for interference with prospective economic advantage cannot be maintained upon the breach of an existing contract. *Delphi Industries, Inc. v. Stroh Brewery Co.*, 945 F.2d 215, 219 (7th Cir.1991). Other than to cite this proposition, defendants do not challenge Stafford's ability to establish the elements of the prima facie case for either tort.

Stafford responds that the alleged breach of contract here relates to commissions for past work; since he was an at-will employee, he does not dispute defendants' right to terminate him. Notably, the claim in *LaScola* did not concern failure to pay amounts past due under a contract. Also, this court observes that a number of Illinois decisions would appear to allow both forms of tortious interference claims to be brought simultaneously. *See Stofer v. First Nat'l Bank of Effingham*, 212 Ill. App.3d 530, 156 Ill.Dec. 570, 579–80, 571 N.E.2d 157, 166–67 (5th Dist.1991); *Chapman v. Crown Glass Corp.*, 197 Ill.App.3d 995, 145 Ill.Dec. 486, 492, 557 N.E.2d 256, 262 (1st Dist.1990). Because defendants have challenged only the interference with contract claim, and because Stafford has presented a valid reason for allowing that claim to stand, this court declines to find that, as a matter of law, he is unable to establish the above-cited elements of either tort.

The inquiry does not end here, however, as "a party who interferes with another's contract is nonetheless privileged from liability where the party acts 'to protect a conflicting interest which is considered to be of equal value or greater value than that accorded the contractual rights involved.'" *Prince v. Zazove*, 959 F.2d 1395, 1397 (7th Cir.1992) (citation omitted). Privileges applicable to claims of tortious interference with contract also apply in actions for tortious interference with prospective economic advantage. *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991). The privilege which defendants would invoke here is that of corporate officers and directors to use their business judgment and discretion on behalf of their corporations. *HPI Health Care Services, Inc. v. Mount Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 24, 545 N.E.2d 672, 677 (1989). The privilege is not, however, absolute.

See *Mittelman v. Witous,* 135 Ill.2d 220, 142 Ill.Dec. 232, 246, 552 N.E.2d 973, 987 (1989) (noting that privilege might be overcome where officer's interests conflict with those of corporation).

In *HPI,* which involved a management firm's decision to prefer one of a corporation's creditors over another, the Illinois Supreme Court enunciated the following test for determining when the qualified privilege might be overcome:

> For example, a hospital management company, whose privilege is based upon the management company's role in exercising business judgment on behalf of the company's hospital, would not be justified in inducing a breach of contract solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further the hospital's interests.

*HPI,* 137 Ill.Dec. at 24, 545 N.E.2d at 678. This circuit has discussed corporate officers' privilege, and the circumstances in which it may be overcome, as follows:

> Corporate officers are not outsiders intermeddling maliciously in the business affairs of the corporation. They are privileged to act on behalf of their corporations, using their business judgment and discretion. Since officers hold policy-making positions, "their freedom of action aimed toward corporate benefit should not be curtailed by fear of personal liability. However, when the action is detrimental to the corporation and outside the scope of corporate authority, immunity ceases to exist." In light of these policies, Illinois law requires—to state a cause of action against corporate officers for interfering with their corporate principal's contract—the allegation of facts which, if true, establish that the officers induced the breach to further their personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the corporation.

*George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1333 (7th Cir.1983) (emphasis in the original).

The above citation from *Fuller* notes one concern underlying the privilege—that corporate officers not be dissuaded from taking necessary action by fear of personal liability. In the context of closely-held corporations, the Illinois Supreme Court has also expressed concern that privilege not be used to expand corporate shareholders' liability for corporate actions beyond that which would otherwise inure under the Business Corporation Act. *See Swager v. Couri,* 77 Ill.2d 173, 32 Ill.Dec. 540, 547, 395 N.E.2d 921, 928 (1979). Thus, *Swager* notes the difficulty of distinguishing between acts in furtherance of a shareholder/officer's personal interest and those in furtherance of corporate goals. *See id.* In the words of the *Swager* opinion, "[t]o distinguish between actions 'in the corporate interest' and actions 'in the shareholders' interest' when defining the scope of the directors' privilege to influence the action of their corporation would be to create a duty to the corporation's contract creditors which would take precedence over their duty to shareholders. This we decline to do." *Id.*

Applying the above principles to this case, it would appear that the Puro defendants have a strong argument in favor of finding the privilege, especially in the case of Stafford's claim for interference with prospective economic advantage. *See Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 656, 568 N.E.2d 870, 879 (1991). Mesnik's claim of privilege is not so strong. *See Marczak v. Drexel Nat'l Bank,* 186 Ill.App.3d 640, 134 Ill.Dec. 441, 444, 542 N.E.2d 787, 790 (1st Dist.1989) (supervisor's freedom to interfere with employee's employment not absolute) (citing *Haupt v. International Harvester Co.,* 582 F.Supp. 545, 549–550 (N.D.Ill.1984)). On the other hand, little is known of Purofied's ownership structure, other than that Arthur and Louis Puro owned beneficial interests in a trust holding the company's stock. The fact of this stock ownership is not sufficient to overcome Stafford's claim of abuse of corporate power in its entirety. Indeed, where there are other ownership interests, the firing of a valued employee may not be in the best interests of share-

holders. *Chapman v. Crown Glass Corp.*, 197 Ill.App.3d 995, 145 Ill.Dec. 486, 494–95, 557 N.E.2d 256, 264–265 (1st Dist.1990). Also, as noted in connection with Count III, the Puros' status as corporate shareholders should not exempt them from liability for opportunistic discharge to avoid payment of commissions past due.

In their fact-based arguments concerning the privilege, defendants argue that the privilege may be overcome only if they acted *solely* for their personal benefit or *solely* to injure Stafford. Even assuming this test enunciated the above-cited passage from *HPI*[5] is the appropriate one, there are questions of fact that preclude a finding that defendants' actions are privileged. Although Stafford has no direct evidence that defendants acted for the sole purpose of injuring him, that intent might be inferred from the totality of the circumstances. Although defendants observe that Stafford has no direct evidence that they benefitted financially from his termination, this contention is disingenuous. As of the time the pleadings on summary judgment were filed, defendants had refused to produce relevant financial information on the question of personal benefit resulting from his termination. Having concluded that defendants have not established exercise of the privilege for business judgment as a matter of law and undisputed fact, this court recommends that summary judgment be denied on Counts IV and V.

### Wage Payment and Collection Act

In Count II, Stafford brings a claim under the Illinois Wage Payment and Collection Act ("Act"). Ill.Rev.Stat. ch. 48, ¶ 39m–1 *et seq.* The Act provides, in relevant part, that:

> Any employer or any agent of an employer, who, being able to pay wages, final compensation, or wage supplements and

being under a duty to pay, wilfully refuses to pay as provided in this Act, or falsely denies the amount or validity thereof or that same is due, with intent to secure for himself or other person any underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due, upon conviction, is guilty of a class C misdemeanor.

Ill.Rev.Stat. ch. 48, ¶ 39m–14. The statute has been interpreted to allow a private action by the employee against an employer. *Aponte v. National Steel Center*, 500 F.Supp. 198, 203–204 (N.D.Ill.1980).

Defendants do not dispute that they fall within the definition of an "employer" under the Act.[6] Instead, they argue that because no one of them had authority to pay Stafford, they lack the wilfulness prerequisite to the imposition of liability under the Act. Although there is no developed case law defining wilfulness under the Act, one decision has analogized to tax collection actions in which willful conduct has been defined as a voluntary, conscious and intentional act. *Johnson v. Western Amusement Corp.*, 157 Ill.App.3d 873, 109 Ill.Dec. 923, 925, 510 N.E.2d 991, 993 (1st Dist.1987). Applying that definition, and noting the earlier determination that there are disputed questions of fact concerning each of these defendants' abilities to cause Purofied to pay Stafford, this court rejects this portion of defendants' argument.

Defendants also take the position that, because of the corporation's cash flow problems, the corporation lacked the ability to pay wages required under the Act. Stafford contends that, despite alleged cash flow problems, Mesnik was paid a salary of $166,000 for 1988, the year of his termination. While defendants would categorize the payment to Mesnik as base sala-

---

**5.** This test may be more stringent than the previously cited Seventh Circuit formulation in *Fuller* which arguably would permit liability in cases of mixed motives, with the proscribed motive being the predominant one. On the record before it, this court finds it unnecessary to address differences between these tests.

**6.** Under the Act, "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." Ill.Rev.Stat. ch. 48, ¶ 39m–13.

ry, there is a discrepancy between Mesnik's W–2 and his deposition testimony to the effect that his salary was $6,700 per month. Also, the court observes that Purofied did not declare bankruptcy until two years after termination. On the whole, there are disputed factual questions as to whether Purofied's financial situation prevented payment of amounts due Stafford above and beyond his base salary. It is therefore recommended that summary judgment be denied with respect to Count II.

### Abatement

█ Defendants argue that Stafford's claim against Arthur Puro must be denied, noting that at common law, personal causes of action abated at the death of either party. *Fireman's Fund Mortgage Corp. v. Zollicoffer,* 713 F.Supp. 1112, 1113 (N.D.Ill.1989). The common law rule has, of course, been modified by statute. The Illinois Survival Act provides as follows:

> In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit. . . .

Ill.Rev.Stat. ch. 110½, ¶ 27–6. It has been found that an action for tortious interference with an employment contract is an action for injury to personal property which survives. *Williams v. Palmer,* 177 Ill.App.3d 799, 127 Ill.Dec. 232, 234–35, 532 N.E.2d 1061, 1063–1064 (3d Dist.1988). *See also Stonestreet v. Iroquois County Sheriff's Merit Comm'n,* 150 Ill.App.3d 1092, 104 Ill.Dec. 365, 367–68, 502 N.E.2d 862, 864–865 (3d Dist.1986), *appeal denied,* 114 Ill.2d 558, 108 Ill.Dec. 425, 508 N.E.2d 736 (1987) (action for wrongful discharge); *Raisl v. Elmwood Industries,* 134 Ill. App.3d 170, 89 Ill.Dec. 100, 103, 479 N.E.2d 1106, 1109 (1st Dist.1985) (retaliatory discharge claim). This court similarly concludes that Stafford's claims for tortious interference with contract and business relationship should survive Puro's death.

█ Stafford's Wage Payment and Collection Act claim is more problematical, in that cause of action created by statute arguably does not survive unless provision for its survival is made by some other statute. *Larson v. Wind,* 542 F.Supp. 25, 26 n. 1 (N.D.Ill.1982); *Johnson v. Household Finance Corp.,* 453 F.Supp. 1327, 1329–1330 (S.D.Ill.1978). Applying that principle, *Johnson* determined that a statutory action under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, did not survive a plaintiff's death. Notably, as part of its analysis, *Johnson* found that the TILA is penal in nature and did not affect the validity or enforceability of any contract or obligation. *Id.* at 1331–1332. The Seventh Circuit has disagreed with the result reached in *Johnson,* however, stating that in determining whether an action is penal for survival purposes, three factors should be considered: "(1) whether the purpose of the action is to redress individual wrongs or wrongs to the public; (2) whether recovery runs to the individual or to the public; (3) whether the authorized recovery is wholly disproportionate to the harm suffered." *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407, 414 (7th Cir. 1980).

The Wage Payment and Collection Act provision on enforcement states that "nothing herein shall be construed to prevent any employee from making complaint or prosecuting his or her own claim for wages." Ill.Rev.Stat. ch. 48, ¶ 39m–11(c). This provision for private actions is separate and apart from the enforcement provisions of that section. Applying the test in *Smith,* this court concludes that the action here is not penal. This being so, and because the action protects Stafford's interest in personal property, this court concludes that the Wage Payment and Collection Act claim should survive.

A contrary result should obtain with respect to Stafford's claim against Arthur

**140**

Puro's estate for punitive damages. In their arguments on this motion, the parties have looked to punitive damage claims asserted by the estates of deceased *plaintiffs*. In the case of deceased defendants, the majority view is that a claim for punitive damages does not survive the death of the tortfeasor. Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Action As Surviving Death of Tortfeasor or Person Wronged*, 30 A.L.R.4th 707, 712 (1984); *Matter of GAC Corp.*, 681 F.2d 1295, 1301 (11th Cir.1982). This court considers the majority view the better view and it would therefore recommend that the claim for punitive damages against Arthur Puro's estate be dismissed.

## MOTION TO COMPEL

Since the filing of this motion, Judge Norgle has ordered the parties to meet within 28 days face to face to resolve any pending discovery disputes. The order requiring that meeting was entered on January 31, 1992, and the parties have not advised this court of the progress of their discussions. Because the recommendations on summary judgment resolve a number of the issues raised by defendants in opposition to plaintiff's motion to compel, the parties may be able to resolve remaining disputes between themselves. This being so, this court will defer decision on the motion to compel until the date of the status hearing set on the minute order accompanying this report.

## CONCLUSION

For the reasons set forth above, this court recommends that defendants' motion for summary judgment be granted in part and denied in part. It is recommended that summary judgment be denied on Counts II, IV and V and that summary judgment be granted in favor of defendants Robert Levin, Sena Puro, Louis Puro and Kenneth Mesnik on Count III of the complaint. It is further recommended that the claim for punitive damages against the Estate of Arthur Puro be dismissed.

Counsel are given ten days from the date hereof to file objections to this Report and Recommendation with the Honorable Charles R. Norgle, Sr. Failure to object constitutes waiver of the right to appeal.

DATED: April 21, 1992